UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
:
ENIGMA SOFTWARE GROUP USA, LLC,          :
:
Plaintiff,          :
:          Case No. 1:16-cv-00057 (PAE)
:
-against-          :
:
BLEEPING COMPUTER LLC and          :
DOES 1-10,          :
:          **FIRST AMENDED COMPLAINT**
Defendants.          :
:
:
--------------------------------------------------------x

Plaintiff Enigma Software Group USA, LLC ("ESG"), by its attorneys, for its First

Amended Complaint against Defendants Bleeping Computer LLC ("Bleeping") and Does 1-10,

respectfully alleges as follows:

**SUMMARY OF THE CASE**

1.      This is an action for civil remedies, including injunctive relief and damages, under

the federal Lanham Act and under New York State law, arising out of the malicious publication

in this District of false, disparaging, and defamatory statements by Bleeping and Does 1-10

regarding ESG and its SpyHunter software product.

2.      Bleeping owns and operates a website at <http://www.bleepingcomputer.com>

(the "Bleeping Website") that Bleeping tells the public is a "technical support site and a self-

education tool for the novice user to learn basic concepts about Computer Technology."

3.      In reality, Bleeping uses the Bleeping Website to promote and recommend

products for which it receives commissions and pushes users to those products through

hyperlinks that, with only a few clicks, take a user from the Bleeping Website to the websites of

the product seller from whom Bleeping receives a commission.  And upon information and belief, such sales have been generated in this District.

4.      One of the products Bleeping promotes -- and a product it receives commissions for selling -- is sold by Malwarebytes, an ESG competitor.

5.      Bleeping does not receive and has never received commissions from ESG.

6.      Thus, Bleeping has a direct financial interest in driving traffic and sales to Malwarebytes and driving traffic and sales away from ESG.

7.      To further that interest, Bleeping has intentionally disparaged ESG and its products while simultaneously recommending that its "novice" forum members use Malwarebytes programs for which it admittedly is paid a commission.

8.      Bleeping not only has unlawfully benefited from its smear campaign to the detriment of ESG, it has damaged the reputation of ESG by refusing to take down its false and misleading statements which have been reposted numerous times on other anti-spyware related forums and websites.

9.      ESG brings this lawsuit to put an end to the smear campaign it has unjustifiably endured at the hands of Bleeping and its associates.

## THE PARTIES

10.      Plaintiff ESG is a Connecticut limited liability company.  ESG does business in this District, but none of ESG's members is a resident or citizen of the State of New York.

11.      Upon information and belief, Defendant Bleeping is a New York limited liability company with a business address at P.O. Box 1025, Melville, New York 11747.

12.      Upon information and belief, Defendants Does 1-10 are entities and individuals that have acted on behalf of or in conjunction with Bleeping in carrying out the acts complained of herein.

2

**JURISDICTION AND VENUE**

13.    This action arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and the laws of the State of New York.  This Court has subject matter jurisdiction, inter alia, pursuant to 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391.

**FACTS**

**Background**

15.    ESG develops and markets computer security products with a particular focus on protecting its millions of customers from malware and other security threats.

16.    As described by the Federal Trade Commission (<https://www.ftc.gov/news-events/media-resources/identity-theft-and-data-security/spyware-and-malware>): "[m]alware, short for 'malicious software,' includes viruses and spyware that can steal personal information, send spam, and commit fraud.  Criminals use appealing websites, desirable downloads, and compelling stories to lure consumers to links that will download malware – especially on computers that don't use adequate security software.  Spyware is one type of malware that can monitor or control your computer use.  It may be used to send consumers pop-up ads, redirect their computers to unwanted websites, monitor their Internet surfing, or record their keystrokes, which, in turn, could lead to identity theft."

17.    ESG protects its customers from these risks by providing software that detects and removes malware, enhances Internet privacy, and eliminates other security threats.

18.    ESG's flagship anti-malware product is a software program called SpyHunter, which presently is in version 4.

19.    ESG sells licenses to SpyHunter solely over the Internet, including at its website, <http://www.enigmasoftware.com>.  ESG enjoys worldwide sales of SpyHunter, including sales

to citizens of the State of New York.

20.     SpyHunter is an adaptive spyware detection and removal tool that provides rigorous protection against the latest spyware threats including malware, Trojans, rootkits, and other malicious software.

21.     Consumers can download a free scanning version of SpyHunter through a link entitled "Download Free Scanner."  The scanner detects whether a computer has malware or other threats.

22.     ESG informs consumers that they also have the choice to buy a license to the full version of SpyHunter and provides consumers with a "Buy Now" link.  The full version of SpyHunter includes the scanner, tools to remove malware and other security protection tools.

23.     ESG's SpyHunter product has received top industry certifications.

24.     SpyHunter has received the Checkmark Certification from West Coast Labs. Checkmark Certification is a highly regarded accreditation program, recognized globally by vendors, end users, and government agencies as providing reliable confirmation of a product's effectiveness in an ever-changing threat landscape.  Checkmark Certification validates the functionality and performance of both content and network security technologies in a range of threat scenarios and attack vectors from standard baseline benchmarking tests against accepted industry standards.

25.     ESG is a Better Business Bureau accredited business.  Better Business Bureau accreditation standards include a "commitment to make a good faith effort to resolve any consumer complaints."  ESG has received an "A+" rating from the Better Business Bureau.

**Bleeping Is A Commercial Enterprise That Earns Commissions By Peddling Products**

26.     Defendant Bleeping holds itself out as an expert in computer security matters.

27.     Upon information and belief, Bleeping and its members are not computer security

experts, but rather they are software resellers purporting to give consumer advice.

28.     Bleeping controls the Bleeping Website which is divided into several sections: (1) News; (2) Downloads; (3) Virus Removal Guides; (4) Tutorials; (5) Deals; (6) Forums; and (7) More.

29.     In the "About BleepingComputer" portion of its website, which can be accessed only from a link at the very bottom of the Bleeping Website, BSC explains that it uses "Affiliate Links" that "generate a commission for [Bleeping] if [a user] use[s] them to purchase a product." *See* Ex. 1.

30.     Upon information and belief, Bleeping generally does not include this disclosure elsewhere on the Bleeping Website, including on its security forums.

31.     To create Affiliate Links, Bleeping uses a program called "Viglinks" that automatically transforms posted links and certain keywords into affiliate links.

32.     By providing Affiliate Links, Bleeping earns a commission if a consumer simply clicks on the link and then clicks on a link to purchase the product that Bleeping is peddling.

33.     Bleeping pushes consumers to products that earn them commissions through its "Virus Removal Guides," which "use programs and utilities that generate commissions for [Bleeping] when [a user] purchase[s] them."  *See* Ex. 1.  Upon information and belief, Bleeping does not disclose its self-interest in the products used in its Virus Removal Guides within the Guides themselves.

34.     In its "Downloads" section, Bleeping provides "special offers and affiliate links that will generate a commission for [Bleeping] if [the user] purchase[s] the software."  *See* Ex. 1. Upon information and belief, Bleeping does not disclose its self-interest in the products that Bleeping provides in the Download section the Bleeping Website.

35.     Similarly, Bleeping provides Tutorials that "may discuss or require specific hardware or software that contain affiliate links that will generate a commission for [Bleeping] if [a user] purchase[s] them." *See* Ex. 1.  Upon information and belief, Bleeping does not disclose its self-interest in the products used in its Tutorials within the Tutorials themselves.

36.     Bleeping uses Affiliate Links not only in the Virus Removal Guides, Downloads, and Tutorials sections that it offers consumers, but also on its messages boards where users comment on and post information about topics related to computer technology.

37.     Notably, Bleeping admits in its "About Us" section that "the products that we [Bleeping] routinely use in our guides and that we receive affiliate commissions from are MalwareBytes, Emsisoft, and SuperAntiSpyware." *See* Ex. 1.

### Bleeping And Its Moderators Control, Directly And/Or Indirectly, The Content On Message Boards

38.     As part of controlling, directly and/or indirectly, the forum on the Bleeping Website, Bleeping has established a hierarchy of "member groups" that informs users of the forum about the status of person who is posting, including whether they are a designee to act on behalf of Bleeping.  *See* Ex. 2.

39.     Bleeping provides its members with a "current list" of the users who are in each "member group."

40.     The highest level "member group" is "Admin & Site Admins."  Lawrence Abrams, the owner of Bleeping, is the overall "Admin" of the Bleeping Website and forums and has the final say when appointing all other staff positions.

41.     The second-highest level "member group" is "Global Moderator & Moderators."

42.     Bleeping holds Global Moderators out to its members as follows:

     A Bleeping Computer Global Moderator or Moderator is someone
     granted special powers by the Admins to enforce the rules of

> Bleeping Computer Forums.  All moderators on all forums can move discussions to different sections of the forum, "close" discussions to prevent users from continuing to discuss them, as well as edit the content of individual posters.  Moderators of both levels answer questions (or help people with problems), and "pin" discussions so they remain visible in their forum section even if no new postings are made to them.  Global Moderators have a few additional powers above that of regular Moderators, the most important of which is the ability to suspend forum posting privileges of members who violate forum rules.

*See* Ex. 2.

43.    Upon information and belief, Bleeping's Global Moderators are expected to post on Bleeping's message boards and when a Global Moderator makes a posting, Bleeping clearly identifies that the post has been made by a Global Moderator.

44.    Upon information and belief, currently there are only three Global Moderators.

45.    One of Bleeping's Global Moderators is known as "Quietman7."

46.    In March 2006, Bleeping announced to its users that it had appointed Quietman7 as an advisor -- the third-highest "member group" on the Bleeping website.  *See* Ex. 3.

47.    Bleeping made the announcement with a post entitled "New Advisor--quietman7" in which Bleeping stated: "Quietman7 has quietly been added to the staff here at BC [Bleeping Computer] as an advisor.  Now we can shout a warm welcome!!!!  Congratulations, welcome, and thanks for becoming an even larger asset for BC [Bleeping Computer]!"  *See* Ex. 3.

48.    Mr. Abrams responded to the March 2006 post by congratulating Quietman7 and thanking him "for accepting the position" to which Quietman7 responded "it is a pleasure to be part of the BC [Bleeping Computer] staff . . . ."  *See* Ex. 3.

49.    In September 2007, Mr. Abrams himself created a post entitled "Big Thank You To Our Newest Global, Quietman7" in which he announced to Bleeping's message board users that Quietman7 had accepted the "position, of Global Moderator here at BC [Bleeping

Computer]." *See* Ex. 4.

50.     Quietman7 responded to the announcement as follows:

> Thanks everyone and thanks Grinler [Abrams' username] for
> offering the sentence … grrr … I mean position.  There are not
> many [web]sites who will give an ex-cop, now a "Bleepin' Janitor"
> the keys to the kingdom.  Usually I only get the keys to the broom
> closet and back door so I can take out the trash.

*See* Ex. 4.

## Bleeping Makes False And Defamatory Statements Both Directly And Indirectly About ESG And Its SpyHunter Product

51.     In the forums that Bleeping maintains on its website, Bleeping, and in particular
posts by Bleeping's appointed Global Moderator, Quietman7, purport to convey factual
information about ESG and its products, but instead assert outright falsehoods that are repeated
in multiple topics on the forum and over multiple years.  *See* Exs. 5-7.  In these posts, Bleeping
makes the following assertions falsely and without any reasonable basis to believe that the
statements were true when made:

- That SpyHunter 4 or ESG engage in "deceptive advertising which violates several consumer protection laws in many states";

- That SpyHunter 4 or ESG has a "history of employing aggressive and deceptive advertising";

- That SpyHunter 4 is a "rogue product";

- That SpyHunter 4 or ESG have not cooperated in submitting their program for testing "most likely due to the program's ineffectiveness and high rate of false positives";

- That SpyHunter 4 or ESG engage in deceptive pricing;

- That most users of SpyHunter 4 "are not aware that when purchasing SpyHunter, they have agreed to a subscription service with an automatic renewal policy"; and

- That SpyHunter 4 is "malware" or "rogue security software" despite not being classified as such by security vendors.

*See* Exs. 5-7.

52.    Each of those statements is false and was false when made.

53.    Upon information and belief, Bleeping and Quietman7 have never tested SpyHunter4 to determine the effectiveness of the program or its rate of false positives.

54.    Bleeping knew, or should have known, that the statements were false when made. The statements rely upon third-hand information that is between 7-10 years old and that was generated by a group of individuals who began an anticompetitive campaign against ESG in 2004.

55.    ESG spent years engaging these individuals in discourse, providing full and accurate information to them, which the individuals admitted they did not have, and ultimately proving each claim to be false.

56.    Upon information and belief, Bleeping knew or should have known that ESG already proved these claims false years before Bleeping made them.

57.    Nonetheless, Bleeping has used and continues to use these false and disparaging statements for its own economic benefit.

58.    In same paragraph in which Bleeping falsely tells its users that SpyHunter4 is a "dubious program with a high rate of false positives," Bleeping instructs its users to "remove" SpyHunter and "replace it" with Malwarebytes' software.

59.    In connection with instructing users to replace SpyHunter4 with Malewarebytes' software, Bleeping provides a single hyperlink for Malwarebytes' website that, if clicked, takes a user directly to the page where the user can click one more link to purchase Malewarebytes' competing product.  Once purchased, Bleeping earns its "Affiliate Commission."

60.    Upon information and belief, the webpage hosts additional false and defamatory articles and third-party comments solicited by the false and defamatory statements made by

9

Bleeping.

61.     Upon information and belief, Defendants Does 1-10 have carried out the aforesaid acts at the direction of, on behalf of, and with full knowledge of Bleeping.

62.     These postings by Defendants are all the more egregious as they represent a clear pattern of making false and unsubstantiated claims, including salacious claims of violations of consumer protection laws which can carry criminal penalties, over multiple topics, in multiple areas of the forum, over a period of multiple years.

63.     ESG, through counsel, has sent a written demand to Bleeping to cease and desist its unlawful conduct, but it has refused to do so.

64.     Bleeping not only has refused to take down the offending post, but Bleeping and Quietman7 have given permission to others to post the false information on other forums, causing further harm to ESG.

65.     Defendants' conduct is willful and malicious.

66.     Upon information and belief, Defendants' unlawful conduct is causing and will continue to cause harm to ESG and its products.

67.     ESG has no adequate remedy at law for certain of the relief requested below.

## FIRST CAUSE OF ACTION

(Violations of Lanham Act § 43(a))

68.     ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

69.     Defendants' publication of false and misleading statements about ESG and SpyHunter constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

70.     Defendants' publication of false statements about ESG and SpyHunter is likely to deceive consumers as to the nature and quality of ESG and SpyHunter, including causing

consumers to believe that SpyHunter itself is a form of malware.

71.   As a direct and proximate result of Defendants' unlawful acts, ESG has suffered and will continue to suffer significant monetary and reputational injury in amounts that will be proven at trial but that are believed to exceed $75,000, exclusive of interest and costs.

## SECOND CAUSE OF ACTION

(Trade Libel/Commercial Disparagement)

72.   ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

73.   Defendants have maliciously published false statements that disparage ESG and its SpyHunter product.

74.   These statements constitute injurious falsehoods and trade libel, which inter alia impugn the integrity of ESG and the quality of SpyHunter.  These statements were expressly directed at ESG.

75.   Defendants have published their false statements to the public by means of the Internet and specifically the Bleeping Website.

76.   There can be no question that the readers of Defendants' statements understand Defendants' defamatory meaning and understand that Defendants' statements are directed at ESG and its products.

77.   ESG has been specifically harmed by Defendants' defamatory statements.

78.   Defendants have no privilege to make their false and harmful statements.

79.   As a direct and proximate result of Defendants' unlawful acts, ESG has suffered and will continue to suffer significant monetary and reputational injury in amounts that will be proven at trial but that are believed to exceed $75,000, exclusive of interest and costs.

## THIRD CAUSE OF ACTION

### (Defamation)

80.     ESG repeats and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

81.     Defendants' published statements concerning ESG and SpyHunter are false and bring ESG into disrepute or contempt and impeach its integrity and reputation.  Specifically, Defendants assert, *inter alia*, that ESG engages in "deceptive advertising which violates several consumer protection laws"; that ESG "has a history of employing aggressive and deceptive advertising"; and that SpyHunter 4 is a "rogue product."

82.     Defendants have published their false statements to the public by means of the Internet and specifically, at least the Bleeping Website.

83.     Defendants are at fault because they maliciously made such statements.

84.     Defendants have no privilege to make such statements.

85.     ESG has been and continues to be damaged by these statements.

86.     ESG is a for-profit corporation, and Defendants' statements prejudice ESG in the conduct of its business and/or to deter others from dealing with it.

87.     As a direct and proximate result of Defendants' unlawful acts, ESG has suffered and will continue to suffer significant monetary and reputational injury in amounts that will be proven at trial but that are believed to exceed $75,000, exclusive of interest and costs.

### **PRAYER FOR RELIEF**

WHEREFORE, ESG respectfully requests that the Court enter judgment in its favor as follows:

a.      Declaring that Defendants' conduct violates 15 U.S.C. § 1125(a);

b.      Declaring that Defendants' conduct constitutes trade libel and/or

commercial disparagement under the laws of the State of New York;

    c.  Declaring that Defendants' conduct constitutes defamation of a corporation under the laws of the State of New York;

    d.  Permanently enjoining Defendants from publishing the false advertising statements identified above in relation to ESG;

    e.  Permanently enjoining Defendants from publishing the statements constituting trade libel and/or commercial disparagement identified above in relation to ESG;

    f.  Permanently enjoining Defendants from publishing the statements constituting defamation of a corporation identified above in relation to ESG;

    g.  Awarding ESG damages in an amount proven at trial and believed to be in excess of $75,000, plus interest;

    h.  Awarding ESG its attorneys' fees and costs incurred in bringing this action; and

    i.  Awarding such other and further relief as the Court deems proper.

## **JURY TRIAL DEMANDED**

  ESG demands a trial by jury of all issues so triable in this action.

Dated: New York, New York     Respectfully submitted,
    January 8, 2016

         By: /s/ Eric A. Prager
           Eric A. Prager (EP-0964)
           K&L GATES LLP
           599 Lexington Avenue
           New York, NY 10022
           Telephone: 212.536.3900
           Facsimile: 212.536.3901
           eric.prager@klgates.com
           *Attorneys for Plaintiffs*