# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

ENIGMA SOFTWARE GROUP USA, LLC,                 :
                                                :
                          Plaintiff,            :
                                                :
          -against-                             :      Case No.: 1:16-cv-00057-PAE
                                                :
BLEEPING COMPUTER LLC and                       :      **MOTION TO DISMISS**
DOES 1-10,                                       :
                                                :
                          Defendants.           :
---------------------------------------------------------x

Defendant Bleeping Computer LLC hereby files its Motion to Dismiss Plaintiff Enigma

Software Group USA, LLC's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

This Motion is based on the attached Memorandum of Points and Authorities, the pleadings and

papers on file in this action, and any oral argument permitted by this Court.

Gregory W. Herbert, Esq.
New York Bar Reg. No. 2502755
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, FL 32801
Telephone: (407) 420-1000
herbertg@gtlaw.com

Marc J. Randazza, Esq.
*Pro Hac Vice Motion Forthcoming*
RANDAZZA LEGAL GROUP, PLLC
4035 South El Capitan Way
Las Vegas, Nevada 89147
Telephone:  (702) 420-2001
ecf@randazza.com

John J. Elliott, Esq.
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
elliottj@gtlaw.com

*Counsel for Defendant*
*Bleeping Computer LLC*

## TABLE OF CONTENTS

1.0    INTRODUCTION ................................................................................................. 1

2.0    FACTUAL BACKGROUND ................................................................................ 2

3.0    LEGAL STANDARDS ........................................................................................ 3

4.0    ARGUMENT ....................................................................................................... 4

    4.1    47 U.S.C. § 230 Bars all Plaintiff's Claims .................................................4

    4.2    Plaintiff's Claims Are Time-Barred.............................................................8

    4.3    Plaintiff Failed to State a Claim for Relief for Defamation.......................10

        4.3.1   Plaintiff Is a Public Figure and Must Plausibly Allege Actual
             Malice ............................................................................................11

        4.3.2   Most of the Statements Are True as Admitted on the Face of the
             Complaint........................................................................................13

        4.3.3   The Remaining Statements Are Statements of Opinion ...........................14

    4.4    Plaintiff Failed to State a Claim for Relief for Trade Libel or Commercial
        Disparagement ............................................................................................19

    4.5    Plaintiff Failed to State a Claim Under § 43(a) of the Lanham Act ...................20

        4.5.1   The Statements Do Not Constitute Commercial Advertising or
             Promotion.......................................................................................21

        4.5.2   The Statements Are Neither False nor Misleading ...................................24

5.0    CONCLUSION................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Adelson v. Harris*,
    973 F.Supp.2d 467 (S.D.N.Y. Sept. 30, 2013) ....................................15

*Albert v. Loksen*,
    239 F.3d 256 (2d Cir. 2001)................................................................11

*Alvi Armani Med., Inc. v. Hennessey*,
    629 F. Supp. 2d 1302 (S.D. Fla. 2008) ................................................5

*Ascentive, LLC v. Opinion Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. 2011) ..............................................5, 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................3

*Atl. Recording Corp. v. Project Playlist, Inc.*,
    603 F. Supp. 2d 690 (S.D.N.Y. 2009)..................................................5

*In re Axonyx Sec. Litig*,
    2009 U.S. Dist. LEXIS 26029 ...........................................................13

*Batzel v. Smith*,
    333 F. 3d 1018 (9th Cir. 2003) .........................................................5, 7

*Bel Canto Design, Ltd. v. MSS HiFi, Inc.*,
    2012 U.S. Dist. LEXIS 86628 (S.D.N.Y. June 20, 2012)..................19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).......................................................................3, 13

*Best Western Int'l, Inc. v. Furber*,
    2008 WL 4182827 (D. Ariz. 2008).......................................................7

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015)..........................................1, 3, 4, 11, 12, 18

*Biro v. Conde Nast*,
    963 F. Supp. 2d 255 (S.D.N.Y. 2013).........................................4, 9, 12

*Bolger v. Young Drug Products Corp.*,
    463 U.S. 60 (1983).......................................................................22, 23

*Boule v. Hutton*,
    328 F.3d 84 (2d Cir. 2003)................................................................21

*Brahms v. Carver*,
    33 F.Supp.3d 192, 195 (E.D.N.Y 2014) ............................................15

*Camprubi-Soms v. Aranda*,
    2001 U.S. Dist. LEXIS 11291 (S.D.N.Y. June 12, 2001)..................11

*Cantor Fitzgerald Inc. v. Lutnick,*
   313 F.3d 704 (2d Cir. 2002)..................................................................................8

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York,*
   447 U.S. 557 (1980)............................................................................................22

*Chao v. Mount Sinai Hosp.,*
   2010 U.S. Dist. LEXIS 133686 (S.D.N.Y. Dec. 17, 2010) ..................................19

*Chau v. Lewis,*
   771 F.3d 118 (2d Cir. 2014)................................................................................15

*City of Cincinnati v. Discovery Network, Inc.,*
   507 U.S. 410 (1993)............................................................................................22

*Cnty. of Erie, N.Y. v. Colgan Air, Inc.,*
   711 F.3d 147 (2d Cir. 2013)..................................................................................3

*Condit v. Dunne,*
   317 F. Supp. 2d 344 (S.D.N.Y 2004)..................................................................15

*Curtis Publ'g Co. v. Butts,*
   388 U.S. 130 (1967)........................................................................................3, 11

*DiFolco v. MSNBC Cable L.L.C.,*
   622 F.3d 104 (2d Cir. 2010)..................................................................................3

*Directory Assistants, Inc. v. Supermedia, LLC,*
   884 F. Supp. 2d 446 (E.D.Va. 2012)....................................................................7

*Donini Int'l, S.P.A. v. Satec (USA) LLC,*
   2004 WL 1574645 (S.D.N.Y. July 13, 2004) ......................................................23

*Egiazaryan v. Zalmayev,*
   880 F. Supp. 2d 494 (S.D.N.Y. 2012)................................................................11

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
   314 F.3d 48 (2d Cir. 2002)............................................................................21, 23

*Flamm v. Am. Assoc. of Univ. Women,*
   201 F.3d 144 (2d Cir. 2000)..........................................................................15, 16

*Fleiss v. Wiswell,*
   157 Fed. App'x 417 (2d Cir. 2005)......................................................................15

*Gertz v. Robert Welch,*
   418 U.S. 323 (1974)......................................................................................14, 15

*Glenn v. Advertising Publications, Inc.,*
   251 F. Supp. 889 (S.D.N.Y. 1966) ......................................................................24

*Gmurzynska v. Hutton,*
   355 F.3d 206 (2d Cir. 2004)................................................................................21

*Gordon & Breach Sci. Publrs. S.A. v. Am. Inst. Of Physics,*
   859 F. Supp. 1521 (S.D.N.Y. 1994)........................................................10, 21, 23

*Graboff v. Am. Ass'n of Orhopaedic Surgeons*,
   559 F. App'x 191 (3d Cir. 2014) ......................................................................................9

*Graziano v. Pataki*,
   689 F.3d 110 (2d Cir. 2012).............................................................................................3

*Gristede's Foods, Inc. v. Unkechauge Nation*,
   2008 WL 333403 (E.D.N.Y. 2008)...................................................................................9

*Groden v. Random House, Inc.*,
   1994 U.S. Dist. LEXIS 11794 (S.D.N.Y. Aug. 22, 1994)................................................24

*Groden v. Random House, Inc.*,
   61 F.3d 1045 (2d Cir. 1995).............................................................................................20

*Gucci Am., Inc. v. Hall & Assocs.*,
   135 F. Supp. 2d 409 (S.D.N.Y. 2001)................................................................................5

*Hatfill v. Foster*,
   401 F. Supp. 2d 320 (S.D.N.Y 2005), *rev'd on other grounds*, 415 F.Supp.2d
   353.....................................................................................................................................19

*Haywood v. St. Michael's College*,
   536 F. App'x 123 (2d Cir. 2013) .......................................................................................4

*Higher Balance, LLC v. Quantum Future Group, Inc.*,
   2008 WL 528148 (D. Ore. 2008)......................................................................................7

*Imig, Inc. v. Electrolux Home Care Products, Ltd*,
   2007 WL 900310 (E.D.N.Y. 2007)..................................................................................20

*Jeweler Magazine, Inc.*, 2006 WL 2254818 (S.D.N.Y. Aug. 7, 2006)........................................23

*Joseph Burstyn, Inc. v. Wilson*,
   343 U.S. 495 (1952)..........................................................................................................23

*Lerman v. Flynt Distrib. Co.*,
   745 F.2d 123 (2d Cir. 1984)........................................................................................3, 11

*Lesesne v. Brimecome*,
   918 F. Supp. 2d 221 (S.D.N.Y 2013)..................................................................10, 19, 20

*Masson v. New Yorker Magazine*,
   501 U.S. 496 (1991)..........................................................................................................17

*Medtech Prods. v. Rani, LLC*,
   596 F.Supp.2d 778 (S.D.N.Y. 2008)................................................................................12

*Merck Eprova AG v. Brookstone Pharms., LLC*,
   920 F. Supp. 2d 404 (S.D.N.Y. 2013)..............................................................................20

*Mr. Chow of New York v. Ste. Jour Azur S.A.*,
   759 F.2d 219 (2d Cir. 1985)..............................................................................................15

*N.Y. Times Co. v. Sullivan*,
   376 U.S. 254 (1964)......................................................................................................3, 11

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ............................................................................5

*O'Brien v. Alexander*,
  898 F. Supp. 162 (S.D.N.Y 1995) ..................................................................19

*Old Dominion Branch No. 496 v. Austin*,
  418 U.S. 264 (1974)........................................................................................14

*Parker v. Google*,
  422 F.Supp.2d 492 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) .........................7

*PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.*,
  578 F. Supp. 196 (S.D.N.Y. 1984) ..............................................................9, 10

*In re Phila. Newspapers, LLC*,
  690 F.3d 161 (3d Cir. 2012)...............................................................................9

*Pusey v. Bank of Am., N.A.*,
  2015 U.S. Dist. LEXIS 91083 (E.D.N.Y. July 13, 2015) ...............................19

*Ricci v. Teamsters Union Local 456*,
  781 F.3d 25 (2d Cir. 2015).................................................................................6

*Roca Labs, Inc. v. Consumer Op. Corp.*,
  2015 WL 6437786 (M.D. Fla. 2015) .................................................................6

*Rubenstein v. Transit Workers' Union of Greater New York*,
  2005 U.S. Dist. LEXIS 19969 (S.D.N.Y. Sept. 6, 2005)................................17

*Sandler v. Simoes*,
  609 F.Supp.2d 293 (E.D.N.Y. 2009) ..............................................................18

*Sentementes v. General Elec. Co.*,
  2014 WL 2881441 (D.Conn. June 25, 2014)....................................................4

*Sherrod v. Enigma Software Grp. USA, LLC*,
  2016 U.S. Dist. LEIXS 179 (S.D. Ohio Jan. 4, 2016) ...................................12

*Smith v. Local 819 I.B.T. Pension Plan*,
  291 F.3d 236 (2d Cir. 2002)...............................................................................6

*Stevo Design, Inc. v. SBR Mktg.*,
  919 F. Supp. 2d 1112 (D. Nev. 2013) ...............................................................7

*Thomas v. Waugh*,
  2015 U.S. Dist. LEXIS 133859 (S.D.N.Y. July 25, 2015) .............................13

*Tobinick v. Novella*,
  2015 U.S. Dist. LEXIS 150083 (S.D. Fla. Sept. 30, 2015) ......................20, 23

*Torain v. Liu*,
  279 Fed. Appx. 46 (2d Cir. 2008) ...................................................................15

*Treppel v. Biovail Corp.*,
  2004 U.S. Dist. LEXIS 20714 (S.D.N.Y. Oct. 15, 2004) ...............................15

*Van-Go Transp. Co. v. New York City Bd. of Educ.*,
   971 F. Supp. 90 (E.D.N.Y. 1997) ..................................................................................18

*W.L. Gore & Associates, Inc. v. Totes, Inc.*,
   788 F. Supp. 800 (D. Del. 1992)....................................................................................24

*Westlake Legal Group v. Yelp, Inc.*,
   599 F. App'x 481 (4th Cir. 2015) ....................................................................................5

*Zeran v. Am. Online, Inc.*,
   129 F.3d 327 (4th Cir. 1997) ...........................................................................................5

**State Cases**

*Brian v. Richardson*,
   87 N.Y.2d 46 (1995) ...............................................................................................15, 16

*Cafferty v. S. Tier Publ'g Co.*,
   226 N.Y. 87 (1919) .........................................................................................................11

*Firth v. State*,
   98 N.Y.2d 365 (2002) ...................................................................................................8, 9

*Gregoire v. Putnam's Sons*,
   298 N.Y. 119 (1948) ........................................................................................................8

*Gross v. New York Times Co.*,
   82 N.Y.2d 146 (1993) ....................................................................................................16

*Haefner v. New York Media, LLC*,
   27 Misc. 3d 1208(A) (Sup. Ct. N.Y. Cty. 2009) .............................................................9

*Immuno AG v. Moor-Jankowski*,
   77 N.Y.2d 235 (1991) ....................................................................................................16

*Internet Brands, Inc. v. Jape*,
   760 S.E.2d 1 (Ga. Ct. App. 2014)....................................................................................7

*Mann v. Abel*,
   10 N.Y.3d 271 (2008) ....................................................................................................15

*Martin v. Daily News, L.P.*,
   990 N.Y.S. 2d 473 (1st Dep't 2014) ................................................................................9

*Morrison v. National Broadcasting Co.*,
   19 N.Y.2d 453 (1967) ....................................................................................................10

*Rinaldi v. Viking Penguin, Inc.*,
   52 N.Y.2d 422 (1981) ......................................................................................................8

*Ruder & Finn v. Seaboard Sur. Co.*,
   52 N.Y.2d 6663 (1981) ..................................................................................................19

*Sandals Resorts Int'l v. Google, Inc.*,
   910 N.Y.S.2d 408 (Sup. Ct. N.Y. Cty. 2010), *aff'd*, 925 N.Y.S.2d 407 (1st
   Dep't 2011) ....................................................................................................................15

*Shiamli v. Real Estate Group of NY, Inc.,*
    17 N.Y.3d 281 (2011) ................................................................6, 7

*Silvercorp Metals Inc. v. Anthion Mgm't LLC,*
    2012 WL 3569952 (Sup. Ct. N.Y. Cty. 2012) ...............................17

*Sweeney v. Prisoners Legal Servs. of New York, Inc.,*
    84 N.Y.2d 786 (N.Y. 1995) ............................................................18

*Themed Restaurants, Inc. v. Zagat Survey, LLC,*
    801 N.Y.S.2d 38 (1st Dep't 2005) ..................................................17

*Vazquez v. Buhl,*
    2012 WL 3641581 (Conn. Super. Ct. 2012) ....................................7

*Versaci v. Richie,*
    815 N.Y.S.2d 350 (3d Dep't 2006) ................................................15

**Federal Statutes**

47 U.S.C. § 230 ...................................................................................1, 4

47 U.S.C. § 230(c)(1) ............................................................................4

**Rules**

Fed. R. Civ. P. 12(b)(6) .........................................................................3

Fed. R. Civ. P. 12(c) .............................................................................3

N.Y. C.P.L.R. § 215(3) ........................................................................8

**Other Authorities**

http://complaintsboard.com/complaints/enigma-software-group-spyhunter-
    c262520.html ...............................................................................14

http://mywot.com/en/scorecard/Enigmasoftware.com ..........................14

http://spywarewarrior.com/de-listed.htm#sh_note ...............................13

http://www.benedelman.org/spyware/threats/ .......................................12

http://www.bleepingcomputer.com/welcome-guide/ ...............................2

http://www.complaintsboard.com/complaints/enigma-software-group-spyhunter-
    c262520.html ...............................................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

**1.0    INTRODUCTION**

This is, at its heart, a defamation case.  It is not the first time a plaintiff, seeking to censor critical speech or bury a negative consumer review, has tried to deploy the Lanham Act in tandem with a defamation claim in the cynical belief that doing so will allow Plaintiff to evade First Amendment protections applicable to defamation claims. The mere fact that Plaintiff used this tactic calls into question the strength of any of its claims.

Even if Plaintiff had facially valid claims, it faces two insurmountable problems that cannot be cured by amendment. Defendant is immune from both liability and suit as to statements authored by third parties (which are the only statements at issue here).  *See* 47 U.S.C. § 230.  Further, every offending statement was made outside the applicable statute of limitations and is thus time-barred.

Even if the Court were to address the merits of Plaintiff's claims, the statements at issue are either not defamatory on their face or constitute non-actionable opinion.  Indeed, the context of the statements – an online consumer advice and product review website created to allow the free expression of users' strongly opinionated advice and commentary – plainly signals to any reader that the postings are the personal views and opinions of the poster.  Plaintiff's Amended Complaint cannot withstand the heightened scrutiny required under the First Amendment.

Further, as a public figure,[1] Plaintiff must meet the highest of standards for defamation claims and plead facts sufficient to overcome the actual malice test.  *Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015).  Because the statements are not defamatory on their face, this is impossible.  Accordingly, Plaintiff's Amended Complaint should be dismissed with prejudice.

---

[1]Given that *New York Times v. Sullivan*'s actual malice test raises the bar for a defamation plaintiff, Plaintiff presumably will claim to be a private figure. As set forth below, Plaintiff is estopped from doing so by its own factual assertions. (*See, e.g.*, Doc. No. 6 at ¶15) (alleging "ESG develops and markets computer security products with a particular focus on protecting its millions of customers from malware and other security threats").

1

**2.0     FACTUAL BACKGROUND**

Defendant operates the website <bleepingcomputer.com> (the "Website").  The Website offers free advice and articles on computer security topics such as how to remove viruses and other malicious software from computers, and other computer tips.  In addition to the articles, the Website provides forums where users can help one another, share information, and hold independent discussions.

One of the users of this forum is someone known only by the screen name "quietman7." He authored a few posts providing information on Plaintiff's "SpyHunter" software in response to questions from a forum user.   These posts were published on the Website's forums on December 10, 2013 (Doc. No. 6-6 at 3), September 28, 2014 (Doc. No. 6-5 at 3-5), November 29, 2014 (Doc. No. 6-6 at 4), and December 4, 2014 (Doc. No. 6-7 at 3-4).   *Quietman7* wrote a review of Plaintiff's software "SpyHunter," reporting that many other users complained about it. Plaintiff then filed suit against Defendant itself, rather than the individual who actually penned the review.[2]

Plaintiff identifies seven allegedly defamatory statements contained in these posts.  (*See* Doc. No. 6 at ¶51.)  However, Plaintiff does not actually plead the precise statements made, but rather creatively re-phrases them in order to make them seem more critical than the statements actually posted.  However, even accepting Plaintiff's misleading re-phrasing, the statements are not reasonably susceptible of a defamatory meaning.

For example, the Amended Complaint alleges that one of quietman7's posts states that SpyHunter is a "rogue product," whatever that is supposed to mean.  (Doc. No. 6 at ¶51.)  This is a misleading characterization of the actual post, however, which in reality states that SpyHunter

---

[2]Defendant appoints certain users of the Website's forums to act as moderators who ensure users are complying with the forum's rules. These moderators are volunteers; they are not employed by Defendant, but merely have the ability to police the forums. (*See* <bleepingcomputer.com> "Welcome Guide" page, located at: http://www.bleepingcomputer.com/welcome-guide/ (last visited Feb. 26, 2016, printout of Welcome Guide attached to the Declaration of Gregory Herbert as **Exhibit B**.)  The Website "is paid for completely by advertisement revenue and the staff are all volunteers."  (Herbert Decl., Exh. B, at 12 of 21).  The Website also encourages users to be patient in waiting for a response to questions on the Website's forums since "everyone here is a volunteer."  (*Id.*) When the Website's moderators post on their own, they are not doing so as agents of Defendant.

"was previously listed as a rogue product on the Rogue/Suspect Anti-Spyware Products List." (Doc. No. 6-6 at 3; Doc. No. 6-7 at 3.)  Similarly, Plaintiff attempts to mislead the Court by alleging that quietman7 stated Plaintiff "engages in deceptive pricing."  (Doc. No. 6 at ¶51.)  The actual statement posted was "many customers have reported deceptive pricing."  (Doc. No. 6-7 at 3.)  There is a big difference.

Likewise, none of the statements at issue claim that SpyHunter is "malware" or "rogue security software," as deceptively alleged in the Amended Complaint.  (Doc. No. 6 at ¶51.)  In fact, the opposite is true. The statement actually posted makes clear that SpyHunter "is not classified as malware or rogue security software and other antivirus and antimalware vendors do not target it for removal." (Doc. No. 6-5 at 4.)  In other words, Plaintiff is suing over statements that are its own fictional re-creations of what was actually published. That's not how a defamation claim works.

## 3.0   LEGAL STANDARDS

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (Rule 12(b)(6)); *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (Rule 12(c)).  A claim is plausible  "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "naked assertions" or "conclusory statements" are not enough. *Id.* (quotation omitted); *see also Cnty. of Erie, N.Y. v. Colgan Air, Inc.*, 711 F.3d 147, 149 (2d Cir. 2013).

Further, public figures, including limited-purpose public figures, must meet a heightened standard and "show that the statements were made with 'actual malice'—that is, with knowledge that the statements were false or with reckless disregard as to their falsity."  *Biro*, 807 F.3d at 544 (citing *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)) (public officials); *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 154-55 (1967) (public figures); *Lerman v. Flynt Distrib. Co.*,

745 F.2d 123, 137, 139 (2d Cir. 1984) (limited-purpose public figures)).  "[Actual] malice must be alleged plausibly in accordance with Rule 8."  *Biro*, 807 F.3d at 545.

The Second Circuit has affirmed the dismissal of defamation claims for failure to plausibly plead facts that satisfy the exacting actual malice standard. *See, e.g., Biro v. Conde Nast*, 807 F.3d 541, 546 (2d Cir. 2015); *Haywood v. St. Michael's College*, 536 F. App'x 123, 124 (2d Cir. 2013)(summary order)("the complaint simply does not plausibly allege that [defendants] acted with actual malice"); *see also Sementes v. General Elec. Co.*, 2014 WL 2881441, at *11 (D.Conn. June 25, 2014)(dismissing defamation claim where plaintiffs failed to allege facts tending to show knowledge of falsity or reckless disregard for the truth, "despite using the word 'maliciously' in their pleadings"). This Court in particular recently emphasized the special role the courts must play at the pleading stage when First Amendment freedoms are at stake: "[I]n defamation cases, Rule 12(b)(6) not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."  *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013).

## 4.0    ARGUMENT

### 4.1    47 U.S.C. § 230 Bars all Plaintiff's Claims

Plaintiff asserts three claims: defamation, trade libel/commercial disparagement, and false advertising.  (Doc. No. 6 at ¶¶68-87.)  Each of these claims seeks to hold Defendant liable for statements not authored by Defendant, but merely published on an online forum operated by Defendant.[3] This is precisely the factual scenario contemplated by the Communications Decency Act, 47 U.S.C. § 230 (the "CDA" or "Section 230"). The CDA provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).   The effect of the statute is to bar "lawsuits seeking to hold a service provider liable for its exercise of

---

[3]The Amended Complaint makes unsupported allegations as to Defendant's purportedly nefarious motivations for operating its site, but none of these allegations are relevant to the issue of Section 230 immunity.

a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone or alter content…." *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 472 (E.D.N.Y. 2011) (quoting *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997)). "'Congress recognized the threat that tort-based lawsuits pose to freedom of speech in the new and burgeoning Internet medium.'" *Ascentive*, 842 F. Supp. at 473. The statute thus reflects the policy decision by Congress to "'overrule . . . any . . . decisions which have treated [interactive computer service] providers and users as publishers of or speakers of content that is not their own.'" *Ascentive*, 842 F. Supp. 2d at 472; *see also Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1306 (S.D. Fla. 2008)("'[t]he purpose of the CDA is to establish 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'"). Accordingly, "[c]ourts across the country have repeatedly held that the CDA's grant of immunity should be construed broadly." *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 700-701 (S.D.N.Y. 2009).

This dispositive statutory defense is of particular significance because "Section 230 immunity, like other forms of immunity, is generally accorded effect at the first logical point in the litigation process." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009). For this reason, dismissal of a complaint on Section 230 grounds "is appropriate unless the complaint pleads non-conclusory facts that plausibly indicate that 'any alleged drafting or revision by [defendant] was something more than a website operator performs as part of its traditional editorial function,' thereby rendering it an information content provider." *Westlake Legal Group v. Yelp, Inc.*, 599 F. App'x 481 (4th Cir. 2015).

A provider of an interactive computer service for purposes of the statute is one who operates "'any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server.'" *Gucci Am., Inc. v. Hall & Assocs.*, 135 F. Supp. 2d 409, 412 (S.D.N.Y. 2001); *see Batzel v. Smith*, 333 F. 3d 1018, 1030 (9th Cir. 2003). "Courts generally conclude that a website falls within this definition." *Ascentive*, 842 F. Supp. 2d at 473 (collecting cases; finding operators of consumer review website were interactive

service providers under Section 230).  Plaintiff pleads no plausible factual allegations that Defendant acted in any capacity other than as the provider of an interactive computer service here.   It admits Defendant controls "directly and/or indirectly, the forum on the Bleeping Website."  (Doc. No. 6, ¶38.)  The allegedly defamatory statements at issue were authored by an individual known as "quietman7".  (*Id*. ¶51; *see also* Doc Nos. 6-5, 6-6, and 6-7.)

Section 230 only fails to apply in instances where an information service provider acts as an "information content provider" with respect to the statements in question, such that it is "responsible, in whole or in part, for the creation or development of [the] information." *Ascentive*, 842 F. Supp. 2d at 474.  "Asserting or implying the mere possibility" that a defendant played a more involved role in the creation of statements beyond that of a publisher is insufficient to defeat Section 230 immunity.  *Id*. at 474-5. While Plaintiff alleges Defendant made the statements in question, the exhibits to its Amended Complaint reflect statements authored only by "quietman7" and other users of Defendant's forums.  Plaintiff does not allege that "quietman7" is an employee or agent of Defendant, much less allege any plausible facts that would establish Defendant did anything more than act as a publisher regarding the allegedly defamatory statements.[4]

Courts across the U.S. have found defendants immune from suit on similar facts. *Ascentive*, 842 F. Supp. 2d at 478-79 (denying preliminary injunction against consumer review website); *Ricci v. Teamsters Union Local 456*, 781 F.3d 25, 28 (2d Cir. 2015)(affirming dismissal of complaint under Section 230, assertion of Section 230 defense "can still support a motion to dismiss if the statute's barrier to suit is evident from the face of the complaint"); *Roca Labs, Inc. v. Consumer Op. Corp*., 2015 WL 6437786 (M.D. Fla. 2015) (granting motions for summary judgment on Section 230 grounds); *Shiamli v. Real Estate Group of NY, Inc.*, 17 N.Y.3d 281, 293 (2011) (affirming dismissal on Section 230 grounds as to statements authored

---

[4] Plaintiff alleges that "Defendants Does 1-10 have carried out the aforesaid acts at the direction of, on behalf of, and with full knowledge of Bleeping."  (Doc. No. 6 at ¶61.)  It does not, however, provide any factual basis whatsoever for this conclusion, and so this is the sort of "[c]onclusory allegation[] or legal conclusion[] masquerading as factual conclusions [that] will not suffice to [defeat] a motion to dismiss."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

by third parties despite addition of headings to complained-of statements); *Batzel v. Smith*, 333 F.3d 1018, 1031 (9th Cir. 2003) ("merely editing portions of an e-mail and selecting material for publication" did not remove service provider from Section 230 immunity); *Parker v. Google*, 422 F.Supp.2d 492, 500-01 (E.D. Pa. 2006), *aff'd*, 242 F. App'x 833 (3d Cir. 2007) (granting dismissal under Section 230 for statements authored by third parties); *Directory Assistants, Inc. v. Supermedia, LLC*, 884 F. Supp. 2d 446, 453 (E.D.Va. 2012)(compiling and distributing links to allegedly defamatory statements did not overcome Section 230 immunity); *Vazquez v. Buhl*, 2012 WL 3641581 (Conn. Super. Ct. 2012) (Section 230 immunity applied despite defendant's providing introduction and hyperlink to allegedly defamatory content).

Plaintiff appears to have made an attempt to plead around Section 230 by making allegations that quietman7 is a moderator on the forums, but for Section 230 purposes, this is not legally relevant.  In fact, many plaintiffs have been frustrated by Section 230, and have tried this creative pleading, to no avail.  Courts that have dealt with statements by online forum moderators have found that this does not diminish Section 230 immunity.  *See Higher Balance, LLC v. Quantum Future Group, Inc.*, 2008 WL 528148, at *7 (D. Ore. 2008) (without evidence that forum moderators were employees of defendant, defendant was immune under Section 230 for statements made by moderators); *Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d 1112 (D. Nev. 2013) (message boards with only occasional curation by message board moderators warrant immunity under section 230); *Shamili v. Real Estate Group of N.Y., Inc.*, 17 N.Y.3d 281, 292-93 (2011); *Internet Brands, Inc. v. Jape*, 760 S.E.2d 1, 4 (Ga. Ct. App. 2014)(online forum operator immune under Section 230 as to statements published by forum moderator because a mere implicit endorsement of a statement did not make operator an information content provider); *Best Western Int'l, Inc. v. Furber*, 2008 WL 4182827, at *9 (D. Ariz. 2008) (co-operators of web site were immune under Section 230 as to statements authored by other co-operator).

Plaintiff's Complaint reveals it seeks to premise liability on Plaintiff's actions as a publisher, rather than a creator, of content.  Count I, the Lanham Act claim, asserts  "Defendants' *publication* of false and misleading statements about ESG and SpyHunter constitutes false

advertising," and that "Defendants' *publication* of false statements . . . is likely to deceive consumers as to the nature and quality of ESG and SpyHunter." (Doc. No. 6 at ¶¶68-69) (emphasis added.) The trade libel claim asserts "Defendants have maliciously *published* false statements that disparage ESG and its SpyHunter product." (*Id*. at ¶73) (emphasis added.) Plaintiff's defamation claim, Count III, asserts "Defendants' *published* statements concerning ESG and SpyHunter are false and bring ESG into disrepute or contempt and impeach its integrity and reputation," and "Defendants have *published* their false statements to the public by means of the Internet and specifically, at least the Bleeping Website." (*Id*. at ¶¶81-82) (emphasis added.) None of these claims relate at all to Defendant's business practices or how they operate their forums. They are premised entirely on statements authored solely by Defendant's moderators and users. Defendant is thus immune from suit under Section 230.

### 4.2     Plaintiff's Claims Are Time-Barred

Plaintiff's claims for defamation and trade libel/commercial disparagement are common law torts asserted under New York law. (Doc. No. 6 at ¶13.) CPLR § 215(3) provides that "an action to recover damages for . . . libel, slander, [or] false words causing special damages . . . shall be commenced within one year."[5] New York has adopted and strictly adhered to the "single publication rule," set out in *Gregoire v. Putnam's Sons* establishing that "the publication of a defamatory statement in a single issue of a newspaper, or a single issue of a magazine, although such publication consists of thousands of copies widely distributed, is, in legal effect, one publication which gives rise to one cause of action and that the applicable Statute of Limitations runs from the date of that publication." 298 N.Y. 119, 123 (1948). The New York Court of Appeals has expanded this rule to online communications. *Firth v. State*, 98 N.Y.2d 365, 370 (2002). The statute of limitations is only "retriggered" by a "republication" of the statement on a separate occasion from the original that is meant to reach a new audience. *See id*. at 371 (quoting *Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 435 (1981)). For example, a

---

[5] This limitation period applies to Plaintiff's state claims because "a statute's rules providing for the start and length of the statute of limitations is substantive law." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002).

new edition of a book might be a republication that triggers a new limitation period, but simply recirculating the same edition is not. *Firth*, 98 N.Y.2d at 371.  It is also "irrelevant, for statute of limitations purposes, that a story remains online after its publication." *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 267 (S.D.N.Y. Aug. 1, 2013).

The Complaint and its exhibits, on their face, reveal that none of the complained-of statements was published within one year prior to the filing of this action.  (Doc. No. 6-5 at 3-5; Doc. No. 6-6 at 3-4; Doc. No. 6-7 at 3.)  In fact, the only posts attributed to quietman7 falling within the statute of limitations merely refer viewers to his prior post on September 28, 2014 via hyperlink.  (*See* Doc. No. 6-5 at 7, 9.)  The law is clear that merely hyperlinking to an earlier publication does <u>not</u> constitute a republication of an allegedly defamatory statement and does not retrigger the limitations period.  *See Haefner v. New York Media, LLC*, 27 Misc. 3d 1208(A) (Sup. Ct. N.Y. Cty. 2009); *see also Martin v. Daily News, L.P.*, 990 N.Y.S. 2d 473, 483 (1st Dep't 2014); *In re Phila. Newspapers, LLC*, 690 F.3d 161, 175 (3d Cir. 2012) (merely linking to allegedly defamatory statement is not a republication triggering new limitation period); *Graboff v. Am. Ass'n of Orhopaedic Surgeons*, 559 F. App'x 191, 195 (3d Cir. 2014) (same).  All of the statements at issue in Plaintiff's state law claims were thus published more than one year prior to Plaintiff initiating this suit, and are time-barred.  The Court must dismiss them with prejudice.

The Court should also find that Plaintiff's Lanham Act claim is time-barred.  The Lanham Act does not contain its own statute of limitations, and so the applicable limitations period "'is that which New York would enforce had an action seeking similar relief been brought in a court of that state.'"  *Gristede's Foods, Inc. v. Unkechauge Nation*, 2008 WL 333403, *2 (E.D.N.Y. 2008). Traditionally, courts in the Second Circuit have found that false advertising claims are analogous to fraud claims and thus use New York's six-year statute of limitations for fraud claims.  *Id.* at *2.  But this is a rule arrived at by analogy, and changes based on the facts of each case.  *See PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.*, 578 F. Supp. 196, 199 (S.D.N.Y. 1984).  Further, "courts in New York have . . . kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action . . . New York courts maintain this

distinction because '[a] contrary result might very well enable plaintiffs in libel and slander cases to circumvent the otherwise short limitations period' for defamation claims." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y 2013) (quoting *Morrison v. National Broadcasting Co.*, 19 N.Y.2d 453, 458-59 (1967)).

This Court in *PepsiCo*, which created the general rule of applying the fraud limitations period in false advertising claims, dealt with the question of whether to use this period or the one-year period for defamation claims. There, this Court elected to use the period for fraud claims, finding that more applicable because false advertising claims are distinguishable from mere commercial disparagement or defamation claims. *PepsiCo*, 578 F. Supp. at 200. Plaintiff's Lanham Act claim here is exactly the sort of claim disclaimed by the *PepsiCo* court. The statements in question were made on a forum operated by a company that allegedly receives affiliate commissions from a competitor of Plaintiff. The statements at issue only concern Plaintiff and its products, not a competitor's. Indeed, Defendant does not offer any products. While the Lanham Act was amended in 1988, after *PepsiCo*, to include statements about the goods or services of a competitor (rather than one's own goods), this change only makes it more apparent that the defamation statute of limitations should apply, and courts that have adopted the reasoning in *PepsiCo* have not addressed Lanham Act's amendments. *See Gordon & Breach Sci. Publrs. S.A. v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1528-30 (S.D.N.Y. 1994). This is a defamation claim poorly disguised as a Lanham Act claim; it is a claim about criticism of Plaintiff's products, and does not implicate any concerns of preventing fraud or consumer confusion. As such, the statute of limitations for defamation claims should apply, and the Court should find that Plaintiff's Lanham Act claim is time-barred.

### 4.3    Plaintiff Failed to State a Claim for Relief for Defamation

Assuming *arguendo* that Section 230 did not immunize Defendant from all of Plaintiff's claims, and Plaintiff had timely brought its claims, Plaintiff has not stated a cognizable claim for relief in its First Amended Complaint. The elements of a defamation claim under New York law

are: "(1) a defamatory statement of fact; (2) that is false; (3) published to a third party; (4) 'of and concerning' the plaintiff; (5) made with the applicable level of fault on the part of the speaker; (6) causing special harm or constituting [defamation] *per se*; and (7) not protected by privilege." *Camprubi-Soms v. Aranda*, 2001 U.S. Dist. LEXIS 11291, *37 (S.D.N.Y. June 12, 2001) (citing *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001)). A statement can only be defamatory if it is a statement of fact that is provably true or false, and when a statement is "substantially true," such that "'the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of libel, no legal harm has been done.'" *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503-04 (S.D.N.Y. 2012) (quoting *Cafferty v. S. Tier Publ'g Co.*, 226 N.Y. 87, 93 (1919)).

### 4.3.1   Plaintiff Is a Public Figure and Must Plausibly Allege Actual Malice

The degree of fault that a defamation plaintiff must prove changes depending on the plaintiff's status and the subject matter of the allegedly defamatory material.  Defamation law creates three classes of plaintiffs: (1) general public figures, who are public officials or individuals whose conduct is generally a matter of interest to the public; (2) limited-purpose public figures, whose conduct is a matter of interest to certain portions of the public within certain contexts; and (3) private figures.  *See Sullivan*, 376 U.S. at 279-80 (public officials); *Butts*, 388 U.S. at 154-55 (public figures); *Lerman*, 745 F.2d at 137, 139 (limited purpose public figures). Public figures must establish "actual malice," "that is . . . knowledge that the statements were false or [made] with reckless disregard as to their falsity," in order to establish liability for a defamation claim.  *See Biro*, 807 F.3d at 544 (collecting cases). The Second Circuit has established a four-part test in determining whether a plaintiff is a limited-purpose public figure. The plaintiff must have:

> (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of

11

prominence in the public controversy; and (4) maintained regular
and continuing access to the media.

*Biro*, 963 F. Supp. 2d at 270.  Several allegations in Plaintiff's Amended Complaint satisfy these elements.  Plaintiff alleges that it "develops and markets computer security products with a particular focus on protecting its *millions of customers* from malware and other security threats." (Doc. No. 6 at ¶15) (emphasis added.)  Plaintiff claims that it "enjoys *worldwide sales* of SpyHunter."  (*Id.* ¶19) (emphasis added.)  It also alleges that SpyHunter "has received top industry certifications" and "has received the Checkmark Certification from West Coast Labs," which "is a highly regarded accreditation program, *recognized globally* by vendors, end users, and government agencies . . . ."  (Doc. No. 6 at ¶¶23-24.)

Additionally, Plaintiff has developed a name for itself in the software security community for being highly litigious in response to  claims about its products.  (*See* <benedelman.org> collection of "Threats Against Spyware Detectors, Removers, and Critics," attached as Herbert Decl., **Exhibit C**)[6] (collecting numerous demand letters and lawsuits from Plaintiff regarding claims of the efficacy of its products.)[7]  Plaintiff's products and business practices have also spurred litigation from unhappy customers, with at least one seeking to bring a class action suit against Plaintiff for its misleading pricing.  *See Sherrod v. Enigma Software Grp. USA, LLC*, 2016 U.S. Dist. LEIXS 179 (S.D. Ohio Jan. 4, 2016).

Plaintiff is a public figure, especially within the relevant software security community. Accordingly, it must prove actual malice to prevail on its defamation claim.  And to survive a motion to dismiss, it must "allege[] [malice] plausibly in accordance with Rule 8."  *Biro*, 807 F.3d at 545.  (holding that "a public-figure plaintiff must plead 'plausible grounds' to infer actual malice by alleging 'enough fact[s] to raise a reasonable expectation that discovery will reveal

---

[6] Available at: http://www.benedelman.org/spyware/threats/ (last accessed Feb. 26, 2016).
[7] This document is referenced in one of the exhibits attached to the Amended Complaint.  It, and all other documents referenced in the exhibits, are thus properly before the Court in deciding this Motion to Dismiss. *Medtech Prods. v. Rani, LLC,* 596 F.Supp.2d 778, 802 (S.D.N.Y. 2008) (in deciding a motion to dismiss, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").

evidence of' actual malice") (quoting *Twombly*, 550 U.S. at 556). Plaintiff has not, and cannot, meet this heightened pleading burden.

### 4.3.2   Most of the Statements Are True as Admitted on the Face of the Complaint

To the extent that Plaintiff asserts that some of the statements at issue are not opinion, and could plausibly be deemed to be statements of fact, such statements are accurate and thus incapable of supporting a defamation claim.  *See Thomas v. Waugh*, 2015 U.S. Dist. LEXIS 133859, *27 (S.D.N.Y. July 25, 2015) (using admission on face of Complaint as basis for dismissing claim); *In re Axonyx Sec. Litig*, 2009 U.S. Dist. LEXIS 26029, *9 (in dismissing claim under Section 10(b) of Exchange Act, noting that plaintiff on face of complaint admitted to truthfulness of allegedly misleading statements.  Plaintiff alleges Defendant stated that its SpyHunter product is a "rogue product" and that Plaintiff has a "history of employing aggressive and deceptive advertising."  (Doc. No. 6 at ¶51.)  None of the statements claim that SpyHunter is a "rogue product;" rather, quietman7's posts on December 10, 2013 (Doc. No. 6-6 at 3) and December 4, 2014 (Doc. No. 6-7 at 3) state that SpyHunter "was previously listed as a rogue product on the Rogue/Suspect Anti-Spyware Products List . . . because of the company's history of employing aggressive and deceptive advertising."   These claims are undeniably true.  The source that the posts provide, attached as Herbert Decl., **<u>Exh. D</u>**,[8] states that SpyHunter "was listed on this page primarily because of the company's history of employing aggressive, deceptive advertising."   Quietman7's statement is thus nothing more than a true and accurate summary of the <spywarewarrior.com> article .

The same can be said for the complained-of statement that Plaintiff engages in "deceptive pricing."  (Doc. No. 5 at ¶51.)  This statement appears in Doc. No. 6-5 at 3, and reads "my main concern is the reports by customers of deceptive pricing . . . ."  The post does not allege that Plaintiff is engaged in deceptive pricing, but rather that **customers have reported** such

---

[8] Available at: http://spywarewarrior.com/de-listed.htm#sh_note (last accessed Feb. 26, 2016).

activities.  This is verifiably true, as reflected by the sources quietman7 cited.  (*See* Herbert Decl., **Exh. E**[9] [Complaints Board posts]; *see also* <mywot.com> Reputation and Internet Safety User Score page for <enigmasoftware.com>, attached as Herbert Decl., **Exh. F**.[10])

Plaintiff's liberal paraphrasing of quietman7's statements continues with the alleged statement "[t]hat **most** users of SpyHunter 4 'are not aware that when purchasing SpyHunter, they have agreed to a subscription service with an automatic renewal policy.'"  (Doc. No. 6 at ¶51) (emphasis added.)  Again, this is not what the actual post says; quietman7 states that "**some** users are not aware" of this practice.  (Doc. No. 6-5 at 3) (emphasis added.)  And once again, this is readily ascertainable from the sources quietman7 cites.  (*See* **Exh. E** [Complaints Board posts].)

Finally, Plaintiff complains about the statement "[t]hat SpyHunter 4 is 'malware' or 'rogue security software' despite not being classified as such by security vendors."  (Doc. No. 6 at ¶51.)  It is difficult to see what Plaintiff's issue is with the actual statement written by quietman7; he states that "**SpyHunter is not classified as malware** or **rogue security software** and other antivirus and antimalware vendors do not target it for removal."  (Doc. No. 6-5 at 4) (emphasis original.)  Plaintiff and quietman7 appear to be alleging the same thing.  There is nothing defamatory about this statement and no plausible allegations in the Complaint that make this statement actionable.

### 4.3.3   The Remaining Statements Are Statements of Opinion

Statements of opinion or rhetorical hyperbole are not statements of fact, and thus cannot be defamatory.  As the Supreme Court famously noted, there "is no such thing as a false idea." *Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974); *see also Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 286 (1974) (finding "rhetorical hyperbole" and "lusty and imaginative expression" not actionable).  Whether a statement is factual is a question of law that the court can

---

[9] Available at: http://complaintsboard.com/complaints/enigma-software-group-spyhunter-c262520.html (last accessed Feb. 26, 2016).
[10] Available at: http://mywot.com/en/scorecard/Enigmasoftware.com (last accessed Feb. 26, 2016).

dispose of at the pleading stage. *Gertz*, 418 U.S. at 339-40; *Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y 2004); *Treppel v. Biovail Corp.*, 2004 U.S. Dist. LEXIS 20714, \*36-37 (S.D.N.Y. Oct. 15, 2004); *Adelson v. Harris*, 973 F.Supp.2d 467, 482 (S.D.N.Y. Sept. 30, 2013). Further, a court must closely consider the overall context, tone and apparent purpose of a statement and whether a reasonable reader, not any conceivable reader, would interpret a given statement literally or otherwise view it as a mere expression of opinion, hyperbole or otherwise. *Mr. Chow of New York v. Ste. Jour Azur S.A.*, 759 F.2d 219, 229 (2d Cir. 1985); *Chau v. Lewis*, 771 F.3d 118, 127 (2d Cir. 2014); *Mann v. Abel*, 10 N.Y.3d 271 (2008); *Brian v. Richardson*, 87 N.Y.2d 46, 51 (1995); *Torain v. Liu*, 279 Fed. Appx. 46, 46 (2d Cir. 2008); *Fleiss v. Wiswell*, 157 Fed. App'x 417 (2d Cir. 2005)(summary order).  In particular, courts often hold statements made in an online forum to be non-actionable opinion. *See, e.g. Sandals Resorts Int'l v. Google, Inc.,* 910 N.Y.S.2d 408 (Sup. Ct. N.Y. Cty. 2010), *aff'd*, 925 N.Y.S.2d 407 (1st Dep't 2011) (because readers give less credence to allegedly defamatory Internet communications, courts should "learn to view libel allegations within the unique context of the Internet"); *Brahms v. Carver*, 33 F.Supp.3d 192, 195 (E.D.N.Y 2014) (noting that statement was made on Internet forum "where people generally solicit and express opinion"); *Versaci v. Richie*, 815 N.Y.S.2d 350 (3d Dep't 2006). Further "when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts, leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment.' *Dunne*, 317 F. Supp. 2d at 364.

The New York Constitution provides even greater protection for statements of opinion, finding that statements of "pure" opinion are absolutely protected.  *See Flamm v. Am. Assoc. of Univ. Women*, 201 F.3d 144, 147-48 (2d Cir. 2000).  New York uses "a flexible approach in distinguishing actionable fact from non-actionable opinion," considering factors such as:

> (1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or

> the broader social context and surrounding circumstances are such
> as to 'signal . . . readers or listeners that what is being read or heard
> is likely to be opinion, not fact.

*Id.* at 153 (quoting *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993)).  More important than a mechanical application of factors is a focus "on the overall context in which the complained-of assertions were made."  *Flamm*, 201 F.3d at 154; *see Brian v. Richardson*, 87 N.Y.2d 46, 53 (1995) (finding that statements in an Op Ed section of a newspaper were more likely to be viewed as statements of opinion); *Gross v. New York Times Co.*, 82 N.Y.2d 146, 155 (1993) (stating that "the courts are obligated to consider the communication as a whole, as well as its immediate and broader social contexts, to determine whether the reasonable listener or reader is likely to understand the remark as an assertion of provable fact"); *Immuno AG v. Moor-Jankowski*, 77 N.Y.2d 235, 253  (1991).

Plaintiff complains about the statement that SpyHunter or Plaintiff engage in "deceptive advertising which violates several consumer protection laws in many states."  (Doc. No. 6 at ¶51.)  This statement is made in posts on December 10, 2013 (Doc. No. 6-6 at 3) and December 4, 2014 (Doc. No. 6-7 at 3).  In both of these posts, quietman7 provides links to the web site Complaints Board, which contains numerous consumer complaints about the quality of SpyHunter and about Plaintiff's business practices.  (*See* Complaints Board posts on SpyHunter, attached as Herbert Decl., **Exh. E**.[11])  These complaints include allegations that Plaintiff failed to disclose to consumers costly registration and subscription fees (*see* post by SeattleTW, Dec. 7, 2010) (claiming that "when I hit 'register' it told me I was being charged only $39.95, but when I hit 'confirm,' it charged me $69.95, a classic 'bait and switch' scheme); that consumers were charged for additional products that customers did not order (*see* post by colliers, July 12, 2013) (claiming that "[t]hey had charged me $39.99 for SpyHunter instead of the stated $29.99 and added and [sic] additional $29.99 for RegHunter which I did not order"); that Plaintiff's product does not work as advertised (*see* post by OMGmom, Feb. 21, 2014) (claiming that "[o]nce you

---

[11]  Available at:  http://www.complaintsboard.com/complaints/enigma-software-group-spyhunter-c262520.html (last visited Feb. 26, 2016).

get [SpyHunter], you CANNOT UNINSTALL IT!" and "after declining to renew [SpyHunter], it infected my computer with the exact same thing I originally bought it to get rid of in the first place"); and that Plaintiff gives no or inadequate customer support when problems with SpyHunter arise (*see* post by Angela1031, Apr. 28, 2012) (customer claiming that she "cannot get support/answers from them," that Plaintiff did not respond to a registered letter, and that her "E-mails and 'open tickets' [are] left unanswered").  Quietman7 disclosed these facts in his posts, and formed a personal opinion based on them, an opinion Plaintiff does not like.  Plaintiff does not allege that any of these underlying statements are false.  The statement is thus protected as privileged opinion based on disclosed facts.

Plaintiff additionally complains of the statement "[t]hat SpyHunter or ESG have not cooperated in submitting their program for testing 'most likely due to the program's ineffectiveness and high rate of false positives.'"  (Doc. No. 6 at ¶51.)  The latter portion of this statement is, like the statement above, an opinion based on disclosed facts as to SpyHunter's lack of efficacy. (Herbert Decl., **Exh. E** (Complaints Board posts); **Exh. F** (<mywot.com> posts).) And as for the former portion of the statement, it is verifiably true, and presumably not denied, that <av-test.org> does not currently include SpyHunter in its list of testing analyses.  At worst, claiming that this is "most likely" due to Plaintiff's non-cooperation with Av-Test plainly signals the poster's personal view or amounts to mild editorializing that has no effect on the "gist" or "sting" of the statement, and thus does not make it defamatory, particularly in light of the overall context of the statements at issue.  *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991) (minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge is justified); *Rubenstein v. Transit Workers' Union of Greater New York*, 2005 U.S. Dist. LEXIS 19969, at *16-17 (S.D.N.Y. Sept. 6, 2005) (statements that union president was a bigot and anti-Semite protected as opinion based on disclosed facts); *Silvercorp Metals Inc. v. Anthion Mgm't LLC*, 2012 WL 3569952 (Sup. Ct. N.Y. Cty. 2012) (letters with supporting hyperlinks claiming plaintiff misstated financial figures protected opinion based on disclosed facts); *Themed Restaurants, Inc. v. Zagat Survey, LLC*, 801 N.Y.S.2d 38, 39-40 (1st

Dep't 2005) (restaurant review based on anonymous consumer reviews protected as opinion); *Sandler v. Simoes*, 609 F.Supp.2d 293 (E.D.N.Y. 2009)(complaints about plaintiff's products with consumer protection agencies warning of unethical business practices were clearly dissatisfied customer opinions).

Even if these were not statements of opinion, Plaintiff has not plausibly alleged facts that allow for an inference of actual malice, which it must do as a public figure defamation plaintiff. Aside from conclusory allegations as to Defendant's knowledge of the falsity of these statements, Plaintiff only alleges these statements are based "upon third-hand information that is between 7-10 years old and that was generated by a group of individuals who began an anticompetitive campaign against ESG in 2004," and that Plaintiff eventually "prov[ed] each claim to be false." (Doc. No. 6 at ¶¶54-55.)  These allegations ignore the numerous, and recent, consumer complaints on websites such as Complaints Board, which quietman7 cites, about Plaintiff's business practices and its SpyHunter product that were continuously published before the posts at issue on Defendant's forums. (Herbert Decl., **Exh. E** (mywot page); **Exh. F** (Complaints Board page).)   Plaintiff also alleges no plausible facts tending to show that Defendant should have known that the claims from third parties about Plaintiff starting in 2004 were "proven false" (assuming the highly implausible claim they actually were "proven false" somehow).  A mere "failure to investigate the veracity of the allegation [cannot] establish actual malice," unless such a failure "amounts to a 'purposeful avoidance,' that is, conduct that 'evinces an intent to avoid the truth.'"  *Van-Go Transp. Co. v. New York City Bd. of Educ.*, 971 F. Supp. 90, 105 (E.D.N.Y. 1997) (quoting *Sweeney v. Prisoners Legal Servs. of New York, Inc.*, 84 N.Y.2d 786, 793 (N.Y. 1995)).  At most, Plaintiff has alleged a failure to investigate claims with sufficient diligence. This is not sufficient to plead actual malice, and thus Plaintiff's defamation claims must be dismissed.  *Biro*, 807 F.3d at 546-47.

### 4.4     Plaintiff Failed to State a Claim for Relief for Trade Libel or Commercial Disparagement

Plaintiff's claim for trade libel/commercial disparagement is nothing more than a naked attempt to do an "end run" around the First Amendment.  This claim fails for the same reason its defamation claim fails.  It is based on precisely the same statements as the defamation claim, statements that are either facially true, or are statements of opinion based on disclosed facts.  Additionally, this claim is duplicative of the defamation claim and cannot coexist alongside it.  *Hatfill v. Foster*, 401 F. Supp. 2d 320, 344 (S.D.N.Y 2005), *rev'd on other grounds*, 415 F.Supp.2d 353 (quoting *O'Brien v. Alexander*, 898 F. Supp. 162, 172 (S.D.N.Y 1995) (finding that "a claim for injurious falsehood is properly dismissed as duplicative where the claim 'relies on the same statements that form the basis for the defamation claim'").  "New York courts have 'kept a watchful eye for claims sounding in defamation that have been disguised as other causes of action.'  As such, '[u]nder New York law, tort claims are construed as defamation claims not just when they seek damages [] for injury to reputation, but also where the entire injury complained of flows from the effect on [a plaintiff's] reputation.'"  *Pusey v. Bank of Am., N.A.*, 2015 U.S. Dist. LEXIS 91083, *9-10 (E.D.N.Y. July 13, 2015) (quoting *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 224 (S.D.N.Y. 2013); *Chao v. Mount Sinai Hosp.*, 2010 U.S. Dist. LEXIS 133686 (S.D.N.Y. Dec. 17, 2010)).  For example, the *Lesesne* court found a tortious interference claim duplicative of a defamation claim because "the gravamen of these claims is that these false statements injured the Plaintiffs by damaging [one plaintiff's] professional reputation," even though the tortious interference claim alleged economic harm.  *Lesesne*, 918 F. Supp. 2d at 224.

To state a claim for commercial disparagement, a plaintiff must allege that the defendant "directed defamatory statements at the quality of [the plaintiff's] goods or services, and that the statements caused special damages."  *Bel Canto Design, Ltd. v. MSS HiFi, Inc.*, 2012 U.S. Dist. LEXIS 86628, *36 (S.D.N.Y. June 20, 2012) (citing *Ruder & Finn v. Seaboard Sur. Co.*, 52 N.Y.2d 6663, 670-71 (1981)).  As with a defamation claim, "it is axiomatic that a claim for commercial disparagement . . . rises and falls on the truth or falsity of a statement that is actually

made." *Imig, Inc. v. Electrolux Home Care Products, Ltd*, 2007 WL 900310, *19 (E.D.N.Y. 2007). Plaintiff's trade libel/commercial disparagement claim is premised on the exact same statements as its defamation claim, claims the same type of injury, and is subject to the same defenses. It is duplicative of the defamation claim and must be dismissed as an improper attempt to circumvent the First Amendment.

### 4.5 Plaintiff Failed to State a Claim Under § 43(a) of the Lanham Act

To prove a claim for false advertising under Section 43(a) of the Lanham Act, a plaintiff must show that:

> (1) The defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 417 (S.D.N.Y. 2013).

The courts "have been careful not to permit overextension of the Lanham Act to intrude on First Amendment values." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995). As with the commercial disparagement claim, Plaintiff's Lanham Act claim is entirely duplicative of its defamation claim. It premises liability on the exact same statements, and alleges the same sort of reputational injury for this claim as it does for the defamation claim. (*See* Doc. No. 6 at ¶¶71, 87.) It is in every way a defamation claim disguised as a false advertising claim. This is precisely the sort of "claim[] sounding in defamation that ha[s] been disguised as other causes of action." *Lesesne*, 918 F. Supp. 2d at 224. The Court should recognize Plaintiff's attempt to circumvent the First Amendment and dismiss this claim. *See Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 150083 (S.D. Fla. Sept. 30, 2015) (granting summary judgment to defendant in case where plaintiff attempted to shoehorn allegedly defamatory statements into a Lanham Act claim).

### 4.5.1   The Statements Do Not Constitute Commercial Advertising or Promotion

While "the Lanham Act encompasses more than the traditional advertising campaign, the language of the Act cannot be stretched so broadly as to encompass all commercial speech." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc*., 314 F.3d 48, 57 (2d Cir. 2002). Thus, the Second Circuit has ruled, "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." *Id*. However, Plaintiff pleads no facts in this regard.  In an absence of that kind of allegation, there is further instruction from the Second Circuit.  "Proof of widespread dissemination within the relevant industry is a normal concomitant of meeting this requirement. Thus, businesses harmed by isolated disparaging statements do not have redress under the Lanham Act; they must seek redress under state-law causes of action." *Id*.

To be "commercial advertising or promotion" under the Lanham Act, this Circuit employs a three-prong test. "The statement must be '(1) commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) although representations less formal than those made as part of a classic advertising campaign may suffice, they must be disseminated sufficiently to the relevant purchasing public.'" *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003).  This District has also established a fourth element, that the Plaintiff and Defendant must be in competition.  *Gordon & Breach*, 859 F. Supp. at 1536.

Plaintiffs fail to properly plead a Lanham violation since they have not alleged any false statements in commercial advertising or promotion. *Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004).  At best, they alleged a *possible* commercial *benefit* as a result of a post, to a third party, recommending using a product to cure the ills caused by the Plaintiff's product.  This is insufficient.  But this, by itself, does not make any statement in question commercial speech.

The Supreme Court has fashioned a few different tests for determining whether a statement is commercial speech.  The narrowest definition is "speech which does no more than propose a commercial transaction."  *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993).  *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 561 (1980) provided a more expansive definition of the term as "expression related solely to the economic interests of the speaker and its audience."  The Court then took a more holistic approach in *Bolger v. Young Drug Products Corp.*, 463 U.S. 60 (1983), dealing with pamphlets promoting the defendant's services, when it decided that the combination of (1) the defendant admitting that the pamphlets were advertisements, (2) the pamphlets referring to the defendants' specific products, and (3) the defendant's direct economic motivations, made the pamphlets commercial speech.  463 U.S. at 66-67.  Notably, none of these facts, standing alone, would have been sufficient to classify the speech at issue as "commercial."  *See id*.

The first two formulations of the "commercial speech" definition obviously do not fit the speech at issue.  Quietman7's posts on Defendant's forums provide information as to the safety and trustworthiness of Plaintiff and its products.  Despite a competing product, the posts do more than merely propose a commercial transaction, and the informational postings are not solely related to the economic interests of Defendant or users of its forums. Even under the more expansive *Bolger* definition, the forum posts are not commercial speech.  Quietman7's posts are statements made in a publicly accessible online forum and constitute his opinion as to the reliability of Plaintiff's products. The statements are an attempt to educate members of the general public as to the potential dangers they may face by installing and using SpyHunter.  At the time of the earliest of these posts, Plaintiff and SpyHunter had a reputation for dubious business practices and unsafe software over a decade in the making.  (*See* Herbert Decl., **Exhibit D** [<spywarewarrior.com> page].)   The single allegation that Plaintiff makes that has any tendency to show the statements are commercial speech is a recommendation that visitors use some alternative software, and that Defendant receives a commission from the maker of one such piece of software.  (*See* Doc. No. 6 at ¶¶58-59.)  The entire commercial speech argument thus

rests on the *possible* fact that Defendant derives a *potential* financial benefit from users who view the post.  But it is already settled that this incidental benefit, by itself, is insufficient to convert a statement into "commercial speech" for constitutional purposes.  *See Bolger*, 463 U.S. at 66-67; *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 150083 (S.D. Fla. Oct. 2, 2015); *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501-02 (1952) (because "books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment").  Because there are no other possible indications that quietman7's statements constitute commercial speech, the Lanham Act cannot apply to the statements.

Despite any improper motives Plaintiff may allege, the Court should address the question of the nature of the speech in question rather than allowing Plaintiff to burden Defendant with discovery.  *See, e.g., Jeweler Magazine, Inc.*, 2006 WL 2254818, *10 (S.D.N.Y. Aug. 7, 2006) (dismissing Lanham Act claim on ground that the "non-commercial nature of a journalist's article cannot be overcome by plaintiff claiming an improper purpose motivated the publisher to run the article"); *Donini Int'l, S.P.A. v. Satec (USA) LLC*, 2004 WL 1574645, *7 (S.D.N.Y. July 13, 2004) (dismissing Lanham act claim on ground that articles in trade magazine critical of plaintiff's products were not commercial speech notwithstanding allegations of conspiracy between publisher and competitor); *Gordon and Breach*, 859 F. Supp. 1521 (holding on motion to dismiss that academic articles challenged under Lanham Act were not commercial speech based on allegations in the complaint and review of the articles).

Beyond this, Plaintiff does not even allege (nor can it) that Defendant is a competitor. The most it can do is claim Defendant receives an affiliate commission from one of Plaintiff's competitors. This does not satisfy the "commercial competition" requirement for "advertising in commerce" under *Gordon & Breach*. 859 F. Supp. at 1536.  Rather than an "organized campaign to penetrate the relevant market," quietman7's statements on Defendant's forums are "isolated disparaging statements" for which Plaintiff "must seek redress under state-law causes of action." *Fendi*, 314 F.3d at 57.  The Court should thus dismiss Plaintiff's false advertising claim.

### 4.5.2   The Statements Are Neither False nor Misleading

Even if the Court finds that quietman7's statements are commercial advertising or promotion, there is no cause of action for false advertising here because the statements are neither false nor misleading.  A statement is only actionable if it is either false or misleading and *material*, meaning that minor inaccuracies do not give rise to a false advertising claim.  Additionally, as with defamation claims, "[s]ubjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act."  *Groden v. Random House, Inc.*, 1994 U.S. Dist. LEXIS 11794, *18 (S.D.N.Y. Aug. 22, 1994) (citing *W.L. Gore & Associates, Inc. v. Totes, Inc.*, 788 F. Supp. 800, 808 (D. Del. 1992).  In other words, "[w]here the alleged misrepresentation is essentially 'a matter of argument, . . . the [consumer] to whom the argument [is] addressed [is] free to make up his own mind as to its validity.'"  *Id.* (quoting *Glenn v. Advertising Publications, Inc.*, 251 F. Supp. 889, 904 (S.D.N.Y. 1966)).

As explained *supra*, none of the statements are false or misleading.  The majority of statements are literally true; SpyHunter was previously placed on the <spywarewarrior.com> Rogue/Suspect Anti-Spyware Products List due to Plaintiff's history of aggressive and deceptive advertising.  (*See* Herbert Decl., **Exhibit D** [<spywarewarrior.com> page].)  There are indeed numerous users of SpyHunter who have complained about the product and Plaintiff's pricing and advertising practices.  (*See* Herbert Decl., **Exhibit E** [Complaints Board page]; **Exhibit F** [mywot page].)  And based on the information disclosed in quietman7's posts on Defendant's forums, there is sufficient information to conclude that Plaintiff takes part in deceptive advertising and did not cooperate with AV-Test in testing SpyHunter.  As none of these statements are false or misleading, the Court must dismiss Plaintiff's false advertising claim.

### 5.0   CONCLUSION

Plaintiff has brought an unsupportable claim to try to remove constitutionally protected speech from the Internet.  It is attempting to deprive the consuming public of information that is vital to their market decisions in choosing computer software.  And it is attempting to circumvent

Defendant's constitutional and federal statutory protections by trying to shoehorn in a claim under the Lanham Act that has no place being here.  The Court should see this suit for what it is and dismiss all of Plaintiff's claims against Defendant, with prejudice.

Respectfully Submitted,

| | |
|---|---|
| /s/ Marc J. Randazza<br>Marc J. Randazza, Esq.<br>*Pro Hac Vice Motion Forthcoming*<br>RANDAZZA LEGAL GROUP, PLLC<br>4035 South El Capitan Way<br>Las Vegas, Nevada 89147<br>Telephone:  (702) 420-2001<br>Facsimile: (305) 437-7662<br>ecf@randazza.com<br>*Counsel for Defendant*<br>*Bleeping Computer LLC* | /s/ Gregory W. Herbert<br>Gregory W. Herbert, Esq.<br>New York Bar Registration No. 2502755<br>GREENBERG TRAURIG, P.A.<br>450 South Orange Avenue, Suite 650<br>Orlando, FL 32801<br>Telephone: (407) 420-1000<br>Facsimile: (407) 841-1295<br>herbertg@gtlaw.com<br>*Counsel for Defendant*<br>*Bleeping Computer LLC* |
| John J. Elliott, Esq.<br>GREENBERG TRAURIG, LLP<br>200 Park Avenue<br>New York, New York 10166<br>Telephone: (212) 801-9200<br>Facsimile: (212) 801-6400<br>elliottj@gtlaw.com<br>*Counsel for Defendant*<br>*Bleeping Computer LLC* | |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served via transmission of Notices of Electronic Filing generated by CM/ECF.

**s/Gregory W. Herbert**
Gregory W. Herbert