UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                   :

ENIGMA SOFTWARE GROUP USA, LLC,       :
                                     :

                   Plaintiff,     :     Case No. 1:16-cv-00057 (PAE)
                                     :

               -against-         :
                                     :

BLEEPING COMPUTER LLC and          :
DOES 1-10,                              :
                                     :

                 Defendants.    :
                                     :
                                     :
--------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ALLEGATIONS ................................................................................................ 2

LEGAL STANDARD ........................................................................................ 4

ARGUMENT .................................................................................................... 5

    I.     Section 230 of the CDA Does Not Immunize Bleeping .................................. 5

          A.    Section 230 Does Not Apply To ESB's Lanham Act Claim ................ 5

          B.    Because Quietman7 is its Agent, Bleeping is an "Information
Content Provider" ............................................................................... 5

                  1.    Quietman7 Qualifies as Both Bleeping's Express and
Implied Agent ........................................................................ 6

                  2.    Bleeping's Arguments to the Contrary Fail ........................... 7

    II.    ESG Has Pled Statements Actionable As Libel and As False
Advertising ................................................................................................. 9

          A.    ESG Has Pled Actionable Libelous Statements of Fact
or Mixed Opinion ............................................................................... 9

          B.    ESG Has Pled False and Misleading Statements ................................ 14

    III.   ESG Has Adequately Pled Its Lanham Act Claim ........................................ 15

    IV.   ESG Has Pled the Required Degree of Fault .................................................. 17

          A.    Bleeping Has Failed to Establish That ESG is a Public
Figure .................................................................................................. 17

          B.    Although Not Required To Do So, ESG Has Adequately Pled
Actual Malice ..................................................................................... 19

    V.    ESG's Claims Are Timely ............................................................................ 19

          A.    The Lanham Act Has No Statute of Limitations and Bleeping
Has Not Established Laches ................................................................. 19

          B.    Bleeping's Defamatory Statements Are Within the One-Year
Limitations Period ............................................................................... 21

CONCLUSION ................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Cases**

*Adelson v. Harris*, 973 F.Supp.2d 467, 489 (S.D.N.Y. 2013) ...................................................... 11

*Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1306-07 (S.D. Fla. 2008) .............. 7

*Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 344-45 (S.D.N.Y. 2010).......................... 9

*Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002) ............................................................ 16

*Apotex Inc. v. Acorda Therapeutics, Inc.*, 11 CIV. 8803 AT, 2014 WL 5462547 (S.D.N.Y. Oct. 23, 2014).................................................................................................................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) .................................................................................. 5

*Behr v. Weber*, No. 16047/89, 1990 WL 270993 (N.Y. Sup. Ct. Jan. 5, 1990)............................ 18

*Best Western Int'l, Inc. v. Furber*, No. CV–06–1537, 2008 WL 4182827 (D. Ariz. 2008) .......... 8

*Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015).................................................................. 19

*Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013)...................................... 19, 23, 25

*Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, 06-3508-cv, 2007 WL 2914452 (2d Cir. Oct. 5, 2007) ................................................................................................................ 20

*Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003) ............................................................... 16, 17

*Brahms v. Carver*, 33 F.Supp.3d 192, 198 (E.D.N.Y 2014)........................................................ 12

*Brown v. Sixteen, Inc.*, No. 02 Civ. 4630, 2009 WL 1159161 (S.D.N.Y. Apr. 28, 2009)............ 21

*Calvin Klein Trademark Trust v. Wachner*, 129 F.Supp.2d 248, 253 (S.D.N.Y. 2001).............. 18

*Capitol Records, LLC v. Vimeo, LLC*, 972 F.Supp.2d 500 (S.D.N.Y. 2013) ................................ 7

*Church of Scientology v. Flynn*, 744 F.2d 694, 696 (9th Cir.1984)............................................. 13

*Columbia Pictures Indus., Inc. v. Fung*, CV 06-5578, 2009 WL 6355911 (C.D. Cal. 2009) ........ 7

*Com. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003)...................... 6

*Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 536 (E.D. Pa. 1999).............. 18

*Condit v. Dunne*, 317 F. Supp. 2d 344, 366 (S.D.N.Y. 2004) ............................................... 12, 13

*Conopco Inc. v. Wells Enterprises, Inc.*, 14 CIV. 2223, 2015 WL 2330115 (S.D.N.Y. May 14, 2015).................................................................................................................................... 15, 21

*Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996) ...................................... 20

*Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007) .............................. 21

*Dinaco, Inc. v. Time Warner Inc.*, 98 CIV. 6422, 2002 WL 31387265 (S.D.N.Y. Oct. 22, 2002) 6

*Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012)........................................... 9

*Etheredge-Brown v. Am. Media, Inc.*, 13 F. Supp. 3d 303, 306 (S.D.N.Y. 2014)................. 23, 25

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002).............. 17

*Fils-Aime v. Ryder TRS, Inc.*, 837 N.Y.S.2d 199 (N.Y. App. Div. 2007) .................................... 8

*Firth v. State*, 761 N.Y.S.2d 361, 362 (N.Y. App. Div. 2003) .................................................... 23

*Fitzgibbons v. City of Oswego*, No. 5:10-CV-1038, 2011 WL 6218208 (N.D.N.Y. Dec. 13, 2011) .................................................................................................................................................. 20

*Flamm v. Am. Assoc. of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000).................................. 12

*Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012) ......................................... 4

*George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014) ............... 20

*Gordon & Breach Sci. Publrs. S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1528-30 (S.D.N.Y. 1994) .................................................................................................................... 21

*Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191 (3d Cir. 2014) ................... 23

*Groden v. Random House, Inc.*, 94 Civ. 1074, 1994 U.S. Dist. LEXIS 11794 (S.D.N.Y. Aug. 22, 1994) ...................................................................................................................................... 10

*Gucci Am., Inc. v. Hall & Assoc.*, 135 F. Supp. 2d 409, 413 (S.D.N.Y. 2001) ........................... 5

*Haefner v. N.Y. Media, LLC*, 27 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2009) ................................. 23

*Haefner v. N.Y. Media, LLC,* 918 N.Y.S.2d 103, 104 (N.Y. App. Div. 2011) ............................ 23

*Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006) ................... 5

*Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013) ............................................... 5

*Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004) ................................. 9

*Higher Balance, LLC v. Quantum Future Group, Inc.*, 2008 WL 528148 (D. Ore. 2008) ........... 8

*Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2d Cir. 1998) ................................................................. 20

*In re Davis*, 347 B.R. 607, 612 (W.D. Ky. 2006) ...................................................................... 25

*In re Phila. Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012) ..................................................... 23

*In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 301 n.29 (S.D.N.Y. 2009) ................... 21

*Internet Brands, Inc. v. Jape*, 760 S.E.2d 1 (Ga. Ct. App. 2014) ................................................ 8

*JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 520 (S.D.N.Y. 2013) ............................ 3

*Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) ................................. 12

*Jose Armando Bermudez & Co. v. Bermudez Intern.*, 99 CIV. 9346, 2000 WL 1225792 (S.D.N.Y. Aug. 29, 2000) .......................................................................................................... 20

*JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 741 (E.D. Va. 2014) ........................................... 10

*Kotowski v. Hadley*, 833 N.Y.S.2d 103, 105 (N.Y. App. Div. 2007) ......................................... 10

*Larue v. Brown*, 333 P.3d 767, 773 (Ariz. Ct. App. 2014) ........................................................ 24

*Lee v. City of Rochester*, 663 N.Y.S.2d 738, 745–46 (N.Y. Sup. Ct. 1997) ............................... 18

*Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984) ........................................... 17

*Manning Intern. Inc. v. Home Shopping Network, Inc.*, 152 F.Supp.2d 432 (S.D.N.Y. 2001) .... 11

*Martin v. Daily News, L.P.*, 990 N.Y.S. 2d 473 (N.Y. App. Div. 2014) ..................................... 23

*Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013) ...... 15

*Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984) .............................................................. 10

*Paterno v. Strimling*, 3 N.Y.S.3d 286 (N.Y. Sup. Ct. 2012) ....................................................... 8

*Pearce v. Manhattan Ensemble Theater, Inc.*, 06 CV 1535, 2009 WL 3152127 (S.D.N.Y. Sept. 30, 2009) ................................................................................................................................... 22

*PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.*, 578 F. Supp. 196, 199 (S.D.N.Y. 1984) ........... 21

*Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 91 (D.D.C. 1991) .......................................... 11

*Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir.2001) ....................................... 18

*Robinson v. Downs*, 834 N.Y.S.2d 770, 771 (N.Y. App. Div. 2007) ........................................... 8

*Sandals Resorts Int'l v. Google, Inc.*, 925 N.Y.S.2d 407, 415 (N.Y. App. Div. 2011) ............... 11

*Shiamili v. Real Estate Group of NY, Inc.*, 17 N.Y.3d 281 (2011) .............................................. 8

*Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d 1112 (D. Nev. 2013) ........................................ 8

*Sunshine Sportswear & Elecs., Inc. v. WSOC TV, Inc.*, 738 F. Supp. 1499, 1506 (D.S.C. 1989) 10

*Themed Restaurants, Inc. v. Zagat Survey, LLC*, 781 N.Y.S.2d 441, 445 (N.Y. Sup. Ct. 2004) . 10

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 148, 153 (2d Cir. 2007) ................. 14

*Time, Inc. v. Firestone*, 424 U.S. 448, 455 (1976) ........................................................................ 18

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 926 (3d Cir. 1990) ..................................................................................................................................................9, 18

*Versaci v. Richie*, 815 N.Y.S.2d 350, 351-52 (N.Y. App. Div. 2006) ........................................ 11

*World Wrestling Fedn. Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 528 (S.D.N.Y. 2001) ............. 19

**Statutes**

47 U.S.C. § 230 .............................................................................................................................. 5

Plaintiff Enigma Software Group USA, LLC ("ESG") submits this Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Second Amended Complaint ("Motion").

## INTRODUCTION

While purporting to offer unbiased, factual information regarding computer security, Bleeping Computer LLC ("Bleeping") instead operates effectively as a sales arm of one of ESG's chief competitors, Malwarebytes Corporation ("Malwarebytes"). To further its commercial self-interest, Bleeping has waged a coordinated campaign of making and disseminating false and misleading statements about ESG to direct consumers away from ESG's Spyhunter product and towards Malwarebytes products, whose sale generates cash commissions for Bleeping. Bleeping's shared profit motive with Malwarebytes is demonstrated by Malwarebytes' donation to Bleeping's defense fund for this case, made in an attempt to ensure Bleeping can continue to disparage ESG to divert sales to Malwarebytes. D.I. 25 at ¶ 77. Bleeping now tries to cloak its unfair competition and commercial speech in the mantle of free speech. But the First Amendment provides no protection for false and deceptive commercial speech that injures ESG and harms vulnerable novice computer users and consumers, who are misled in their quest for reliable information on antimalware protection in the high-risk modern world of computer hacking, identity theft, and theft of confidential business information.

Bleeping's Motion must be denied in its entirety for the following five reasons.

- *First*, Bleeping does not argue, and therefore, concedes that Section 230 of the Communications Decency Act ("CDA") does not apply to ESG's Lanham Act claim and cannot be a basis to dismiss that claim. Additionally, Bleeping, through its agent Quietman7, is an "information content provider" that is not afforded any immunity under Section 230 for the libel and trade libel causes of action ESG asserts.

- *Second*, Bleeping's argument that its statements regarding ESG and its products are true and/or pure opinion falls flat. Among other things, Bleeping's argument ignores that the statements it made were in connection with providing technical advice to novice computer users, premised upon patently false facts or undeniably outdated false information, and misleadingly conveyed to consumers that the statements were based in fact, which they were

not.  As such, all of the alleged statements are actionable.

- **Third,** Bleeping's false and misleading statements constitute actionable "commercial advertising and promotion" under the Lanham Act.  Bleeping made the statements as part of its coordinated campaign to mislead consumers about ESG and its products and to divert sales from ESG to Malwarebytes to generate revenues for itself.

- **Fourth,** Bleeping is wrong that ESG is required to plead "actual malice" to state a libel claim.  Bleeping cannot establish that a heightened pleading standard applies to that claim because Bleeping has not established ESG is a limited public figure.  Nonetheless, ESG has adequately pled facts that establish Bleeping made the statements with actual malice.

- **Finally**, all of ESG's claims are timely.  Significantly, Bleeping fails to inform the Court that the Lanham Act does not contain a statute of limitations provision, thus making its statute of limitations argument unavailing.  As importantly, Bleeping does not even address, let alone meet its burden on a motion to dismiss, to establish that the equitable doctrine of laches bars ESG's Lanham Act claim.  Bleeping also cannot establish that ESG's state-law claims are untimely as the Complaint and Exhibits show that Bleeping has made defamatory statements within the applicable one-year limitations period and also has republished prior defamatory statements during that same time, which completely defeats Bleeping's limitations argument.

## **ALLEGATIONS**

ESG is an established computer security company whose products have protected millions of customers from malware, system breaches, and identity theft.  D.I. 25 at ¶¶ 21-25. ESG has an "A+ rating" from the Better Business Bureau.  *Id.* at ¶ 31.  Its flagship trademarked antimalware product, SpyHunter, has received Checkmark Certification from West Coast Labs, a highly regarded accreditation that confirms SpyHunter's functionality and efficacy.  *Id.* at ¶ 30.

Bleeping operates a website at www.bleepingcomputer.com (the "Bleeping Website") that Bleeping advertises to the public as a "premier" destination for computer users to receive technical support and a place "for the novice user to learn basic concepts about Computer Technology."  *Id.* at ¶ 2.  The Bleeping Website includes a "Forums" section wherein Bleeping provides users with expert targeted technical assistance and factual information.  *Id.* at ¶¶ 41-45. In addition, Bleeping receives sales commissions from several software companies through its "Affiliate Program," by directing or assisting consumers to buy products from Bleeping Affiliates.  *Id.* at ¶¶ 10, 42.  To generate revenues from its "Affiliate Program," Bleeping

converts certain links and keywords into "Affiliates Links" throughout its website and forums. *Id.* at ¶¶ 8, 35-36. When a user clicks an "Affiliate Link" and purchases the advertised product, Bleeping earns sales commissions from the company whose product was sold. *Id.* at ¶ 37. ESG is not a member of Bleeping's "Affiliate Program." *Id.* at ¶ 11.

To direct and control the functioning and content of its forums, Bleeping has designed, created, and implemented a special "member group" hierarchy by which Bleeping selects "staff members" who it invests with authority to act on its behalf. *Id.* at ¶¶ 45, 47-53, 60. Bleeping also specifically distinguishes the posts and information provided by its "staff members" from that which is provided by its unaffiliated users of the Bleeping Website. *Id.* at ¶¶ 46, 53.

Bleeping not only self-selects its "staff members," it then holds those staff members out to the public as computer experts that novice users can rely upon and trust to provide correct, unbiased information. *Id.* at ¶ 32. For instance, Bleeping informs users that its "Advisors" provide "consistently high quality and expert responses to people's questions in the forums" and "can be trusted to give correct and understandable answers to our member's questions." *Id.* at ¶ 51. Bleeping also informs its users that it has vested "Moderators" and "Global Moderators" with authority above and beyond Advisors also to act on behalf of Bleeping to "enforce the rules of the … Forums," including moving and editing others' posts, and for Global Moderators, "suspend[ing] forum posting privileges of members who violate forum rules." *Id.* at ¶ 49.[1] Using its website design and member hierarchy, Bleeping has engaged in a coordinated commercial campaign to profit at ESG's expense by routinely spreading false, inaccurate,

---

[1] Bleeping asserts that moderators "merely have the ability to police the forums," D.I. 30 at 9 n.2 (ECF pagination), and that ESG's allegations regarding how Bleeping holds out its staff members "apply only to Defendant's Advisors," *id.* at 13 n.4. These assertions are inconsistent with the allegations of the Complaint and must be ignored. *See JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 520 (S.D.N.Y. 2013). Bleeping also baselessly accuses ESG of "intentionally neglect[ing] to mention" that descriptions of staff member expertise "only apply to Defendant's Advisors (which quietman7 is not), and not to Global Moderators (which quietman7 is)." ESG not only expressly pled that Quietman7 served as an Advisor, D.I. 25 at ¶ 66, and was subsequently promoted to Global Moderator, *id.* at ¶ 69, but also quoted Bleeping's own staff member descriptions in full, *id.* at ¶¶ 49, 51.

misleading and disparaging statements about ESG and its products and misleading consumers

into purchasing competing products from ESG's competitors who are Bleeping's "Affiliates."

*Id.* at ¶¶ 7, 32-33.  Quietman7, a Bleeping staff member and one of only three Global

Moderators, is the chief mouthpiece for Bleeping's campaign against ESG.  *Id.* at ¶¶ 65-74.

When any user mentions ESG or SpyHunter in a post, Quietman7 (or his fellow staff members)

***routinely*** respond by making false, inaccurate, misleading and disparaging statements about ESG

and SpyHunter and/or directing users to other posts that contain similar statements he and other

Bleeping staff members have made.  *Id.* at ¶¶ 78-88; D.I. 25-6 - 25-11.  In those posts, Bleeping

not only propagates falsehoods regarding ESG but further instructs users to uninstall SpyHunter,

request a refund from ESG, and to ***install its Affiliates' products instead.***  D.I. 25 at ¶ 89.  To

further its coordinated commercial campaign, Bleeping has a policy of removing links to ESG

products that users post in the forums.  *Id.* at ¶¶ 63, 92; D.I. 25-11.

ESG has repeatedly requested that Bleeping cease and desist its unlawful conduct.  D.I.

25 at ¶ 96.  Bleeping not only has refused to remove the defamatory posts but has intentionally

further disseminated its false and misleading statements.  *Id.* at ¶¶ 96-97.  As a result, ESG has

suffered monetary and reputational harm including diverted sales and refunds and the lessening

of goodwill associated with the company name and its products.  *Id.* at ¶¶ 107, 115, 123.

## LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, the Court must "construe the Complaint liberally,

accepting all factual allegations … as true, and drawing all reasonable inferences in plaintiff['s]

favor."  *Galiano v. Fid. Nat. Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012).  Under the

*Twombly/Iqbal* plausibility standard, a motion to dismiss must be denied "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Hershey v. Goldstein*, 938 F. Supp. 2d 491, 505 (S.D.N.Y. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)).  Because Bleeping has not come close to meeting its high burden to show that under "the allegations in a complaint, however true" ESG could not raise a claim of entitlement to relief, Bleeping's Motion must be denied as to all three of ESG's causes of action.[2]  *Id.*

## ARGUMENT

### I.  Section 230 of the CDA Does Not Immunize Bleeping.

#### A.  Section 230 Does Not Apply To ESG's Lanham Act Claim.

Bleeping does not (and cannot) argue that Section 230 of the CDA acts as a bar to ESG's Lanham Act claim.  Section 230 expressly states that "[n]othing in this section shall be construed to limit or expand any law pertaining to intellectual property."  47 U.S.C. § 230.  Applying this express language, this district has held that Section 230 does not bar otherwise actionable false advertising/unfair competition claims, which, for the reasons explained below, ESG has asserted here.  *Gucci Am., Inc. v. Hall & Assoc.*, 135 F. Supp. 2d 409, 413 (S.D.N.Y. 2001).

#### B.  Because Quietman7 is its Agent, Bleeping is an "Information Content Provider."

Bleeping's argument that Section 230 protects it from liability for defamatory statements is based on the false premise that ESG seeks to hold Bleeping liable in its capacity as a website operator.  *See* D.I. 30 at 11.  To the contrary, ESG alleges that Bleeping, through its agent Quietman7, is "the publisher or speaker" of statements at issue, which Bleeping concedes makes Section 230 inapplicable.  *Id.* at 12.  Indeed, Bleeping clearly knows this is the basis for ESG's claims (*see id.* at 14), yet tellingly fails to substantively address the argument and does not even

---

[2] For purposes of its Motion, Bleeping incorrectly attempts to collapse ESG's causes of action into a single claim of libel.  *See Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 470 (S.D.N.Y. 2006).  ESG's libel count goes to statements that impugn the character and business ethics of ESG while the trade libel/commercial disparagement count targets statements that go to the quality and efficacy of ESG's services and products, including SpyHunter.  The two claims are directed to different statements on different topics within a given post, rather than the "same statements."  Moreover, ESG's Lanham Act claim targets a much broader swathe of behavior; it seeks redress for Bleeping's pattern and practice of engaging in unfair competition for its own gain.

set forth the legal standard for agency.  Because ESG has alleged facts establishing Quietman7 is Bleeping's agent, the Court must reject Bleeping's Section 230 defense.

### 1.   Quietman7 Qualifies as Both Bleeping's Express and Implied Agent.

Under New York law, a principal-agent relationship can be created either expressly or by implication.  Quietman7 qualifies as Bleeping's agent under both standards.  An express agency is created through (1) "the principal's manifestation of intent to grant authority to the agent," (2) "agreement by the agent," and (3) the principal's control "over key aspects of the undertaking." *Com. Union Ins. Co. v. Alitalia Airlines, S.p.A.*, 347 F.3d 448, 462 (2d Cir. 2003).  Bleeping's relationship with Quietman7 satisfies all criteria for an express agency relationship.

***First,*** Bleeping manifested its intent to authorize Quietman7 to post on its behalf by selecting him to serve as Advisor and Global Moderator and holding out staff as representatives that provide expert, unbiased technical information.  D.I. 25 at ¶¶ 32, 49, 51-53, 60.  ***Second,*** Quietman7 publicly accepted staff positions on Bleeping's forums and further trumpeted Bleeping's grant of authority by using the "Bleepin' Janitor" moniker and signing forum posts as "The BC [Bleeping Computer] Staff."  *Id.* at ¶¶ 66-72.  ***Third,*** Bleeping controls key aspects of staff activity by designing and implementing a member group hierarchy through which Bleeping establishes the rights, powers and privileges of those groups. *Id.* at ¶¶ 45, 59, 62-63.

Quietman7 also qualifies as Bleeping's agent under an implied agency theory.  Implied agency results where a defendant is "responsible for [the agent's] appearance of authority and … [the third party's] reliance on the appearance of authority was reasonable."  *Dinaco, Inc. v. Time Warner Inc.*, 98 CIV. 6422, 2002 WL 31387265, at *3 (S.D.N.Y. Oct. 22, 2002) *aff'd,* 346 F.3d 64 (2d Cir. 2003).  Bleeping created the appearance of authority for Quietman7 and his posts by selecting him to be an Advisor and Global Moderator, marking all of his posts with those titles, and representing to users that staff members are its representatives on the forums.  D.I. 25 at ¶¶

49, 52, 53, 60.  Reliance by users on Bleeping's representations is reasonable; many novice users come to the site to find factual information from an authoritative source connected to Bleeping, Bleeping's representations intentionally hold Quietman7 out as such a source, and Bleeping touts that its users listen to its recommendations.  *Id*. at ¶¶ 2, 4, 32, 90.

Indeed, one of Bleeping's very own cited cases confirms that it is not entitled to Section 230 immunity under these facts.  *See Alvi Armani Med., Inc. v. Hennessey*, 629 F. Supp. 2d 1302, 1306-07 (S.D. Fla. 2008) (denying motion to dismiss under Section 230 where "Plaintiffs have alleged Media Visions itself created tortious content" by, *inter alia*, "publicly stat[ing] that [Defendant] is unethical" "through its agents," and "fail[ing] to disclose to the public their own sponsor relationship with Plaintiffs' competitors …, [thereby] misleading the public"); *see also Columbia Pictures Indus., Inc. v. Fung*, CV 06-5578, 2009 WL 6355911 (C.D. Cal. 2009) (finding websites liable for inducement of copyright infringement in part based on the actions of their moderators "whose job it is to look after the running of the forums from day to day," and who could "edit, delete, and reorganize postings in the forums" and "ban selected abusive users and remove user-posted … files," because those moderators were agents of the website under common law principles); *Capitol Records, LLC v. Vimeo, LLC,* 972 F.Supp.2d 500 (S.D.N.Y. 2013) (finding a triable issue of fact as to whether defendant's staff members acted as agents of the website where the staff members were "the editorial voice" of the website and posts by staff members were marked with a "staff badge" visible to all users).[3]

### 2.   Bleeping's Arguments to the Contrary Fail.

Unable to refute that its Section 230 defense is untenable under agency law, Bleeping does not even attempt to argue that ESG's factual allegations fail to satisfy the elements of actual

---

[3] The cases Bleeping cites as "comparable" on the facts to this case all seek to hold an "interactive computer service" provider liable either (1) as the publisher or speaker of third party content or (2) for contributing to or soliciting third party content.  *See* D.I. 30 at 13-14.  These theories of liability are irrelevant to ESG's assertion that Bleeping is liable as the "information content provider" of content created by its agent, Quietman7.

or implied agency.  Instead, Bleeping vaguely asserts that Quietman7's volunteer status precludes agency and that "for Section 230 purposes, [moderator status] is not legally relevant." *See* D.I. 30 at 13-14.  Both arguments fail.

That Quietman7 may be a "volunteer" rather than a paid employee of Bleeping has no legal relevance to the Court's analysis of the agency issue.  "One who volunteers services without an agreement for or expectation of reward may be a servant of the one accepting such services."  Restatement (Second) of Agency § 225.  Indeed, New York courts have repeatedly found volunteers to be agents if common law agency requirements are met.  *See, e.g.*, *Paterno v. Strimling*, 3 N.Y.S.3d 286 (N.Y. Sup. Ct. 2012); *Fils-Aime v. Ryder TRS, Inc.*, 837 N.Y.S.2d 199 (N.Y. App. Div. 2007); *Robinson v. Downs*, 834 N.Y.S.2d 770, 771 (N.Y. App. Div. 2007).

In addition, ESG's claim of agency is not dependent upon Bleeping's designation of Quietman7 as a "moderator;" rather, Quietman7 is an agent based on the duties and representations that Bleeping itself has given to and publically made about its staff members. Indeed, none of the cases Bleeping cites finding Section 230 immunity where moderators were at issue dispute this proposition.  *See Higher Balance, LLC v. Quantum Future Group, Inc.*, 08-233-HA, 2008 WL 528148 (D. Ore. 2008) (plaintiff failed to show moderators were "staff members" or otherwise agents); *Internet Brands, Inc. v. Jape*, 760 S.E.2d 1 (Ga. Ct. App. 2014) (moderator/administrator not an agent where forum had minimal oversight structure and moderator's role was limited to spam deletion).[4]  Because ESG's agency argument is well-supported (and undoubtedly will be further strengthened in discovery), Bleeping's conclusory quibbling with ESG's agency allegations, particularly in light of its request to stay discovery, do not constitute grounds for dismissal.  *See Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327,

---

[4] Three of the cases Bleeping cites do not consider a moderator-as-agent argument at all.  *See Stevo Design, Inc. v. SBR Mktg.*, 919 F. Supp. 2d 1112 (D. Nev. 2013); *Shiamili v. Real Estate Group of NY, Inc.*, 17 N.Y.3d 281 (2011); *Best Western Int'l, Inc. v. Furber*, No. CV–06–1537, 2008 WL 4182827 (D. Ariz. 2008).

344-45 (S.D.N.Y. 2010) (internal quotations omitted) ("[T]o survive a motion to dismiss …, a plaintiff need only raise a sufficient inference that some sort of agency relationship existed between the purported principal and agent. …[W]here the circumstances alleged in the pleading raise the possibility of a principal-agent relationship, and no written authority for the agency is established, questions as to the existence and scope of the agency are issues for the jury.").

## II.  ESG Has Pled Statements Actionable As Libel and As False Advertising.

Unable to hide behind Section 230, Bleeping engages in self-serving, distorted mischaracterizations of its false and misleading statements in an attempt to pretend before this Court that the statements are somehow innocuous, true and/or pure opinion.  Bleeping also incorrectly suggests that libel/trade libel and Lanham Act false advertising claims require the same evaluation of whether statements are actionable.  *See Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1261 (11th Cir. 2004) (finding no libel claim where statement was literally true but recognizing statement was potentially misleading under the Lanham Act); *see also U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 926 (3d Cir. 1990).  ESG addresses the libel/trade libel analysis first, and then moves to the Lanham Act.

### A.  ESG Has Pled Actionable Libelous Statements of Fact or Mixed Opinion.

To be actionable as libel/trade libel, a statement must be false and (1) factual or (2) mixed opinion based on disclosed but false facts or implying a basis of unstated facts.  *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012).  Under this standard, Bleeping's argument that the alleged statements are true or opinion fails for at least six separate and distinct reasons.

*First***,** Bleeping's statements are factual because they are objectively verifiable, not a subjective matter of taste or preference.  For instance, whether ESG engages in "deceptive advertising which violates several consumer protection laws" can be determined by reference to whether ESG has been found liable for such violations or supported by a properly performed,

detailed legal analysis.  *See Kotowski v. Hadley*, 833 N.Y.S.2d 103, 105 (N.Y. App. Div. 2007) (finding that statements regarding plaintiff's violations of the law "contain assertions of objective fact"); *see also Ollman v. Evans*, 750 F.2d 970, 980 (D.C. Cir. 1984) ("[C]ourts have … not hesitated to hold that accusations of criminal conduct are statements 'laden with factual content' that may support an action for defamation.").  Likewise, when Bleeping states or implies that SpyHunter is a "rogue," "dubious" and/or "ineffective" product with a "high rate of false positives," it is using industry terms of art that make claims regarding SpyHunter's technical functioning that can be proven true or false.  *See generally Themed Restaurants, Inc. v. Zagat Survey, LLC*, 781 N.Y.S.2d 441, 445 (N.Y. Sup. Ct. 2004) *aff'd*, 801 N.Y.S.2d 38 (N.Y. App. Div. 2005) (finding "items such as the physical conditions of a restaurant or the ingredients of a dish" can be statements of fact); *Groden v. Random House, Inc.*, 94 Civ. 1074, 1994 U.S. Dist. LEXIS 11794 (S.D.N.Y. Aug. 22, 1994) (recognizing that a statement "capable of scientific, accounting or other verification" can be actionable).

     For example, as Bleeping full well knows, "rogue" is an industry term used to describe antimalware software that purposely generates fake results to make it look effective.  D.I. 25 at ¶ 80.  Thus, calling ESG's SpyHunter "rogue" and a "scam" in the competitive antimalware market - a specialized setting where trust in the integrity of products to protect consumers from hacking is critical - is in effect calling it - without any basis - "snake oil."  *See, e.g.*, *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 741 (E.D. Va. 2014) (finding on motion to dismiss that statement plaintiff's system was "a scam, a scheme, a con" was sufficiently pled as false factual assertion); *Sunshine Sportswear & Elecs., Inc. v. WSOC TV, Inc.*, 738 F. Supp. 1499, 1506 (D.S.C. 1989) ("Plaintiffs contend that the terms 'scam'[,] 'rip-off' … [and] 'bait and switch' … have ascertainable meaning and can be identified as either true or false.  The court agrees.");

*Prins v. Int'l Tel. & Tel. Corp.*, 757 F. Supp. 87, 91 (D.D.C. 1991) (recognizing plaintiff's evidence that in the "defense contracting or marketing industry" a term had "a more negative connotation carrying harmful consequences"); *see also Manning Intern. Inc. v. Home Shopping Network, Inc.*, 152 F.Supp.2d 432 (S.D.N.Y. 2001) (declining to dismiss where plaintiff alleged false advertising based on industry meaning of terms as defined by FTC guidelines).

    **Second,** the context of Bleeping's statements clearly conveys to readers that they are factual and not opinion. *See Adelson v. Harris*, 973 F.Supp.2d 467, 489 (S.D.N.Y. 2013) ("In assessing whether a statement constitutes opinion or fact, courts look to the broader social context of the statement, and evaluate the impact that the statements would have on a reasonable reader."). The Bleeping Website is not an unregulated public internet forum on which random users are totally disconnected from the design and management of a website and are encouraged to post any and all opinions. Rather, Bleeping represents to users that its staff can be trusted to provide objective information and recognizes that "[f]olks come to Bleeping Computer for advice, recommendations and other assistance" and that Bleeping staff "provide that based on our experience and expertise so they [users] can make an informed decision."[5] *See* D.I. 25 at ¶¶ 2-3, 32; D.I. 25-10 at 10. Indeed, Bleeping reinforces to readers that the information posted is to be understood as factual by including footnotes and citations that purport, although falsely and misleadingly, to support its defamatory statements.

    **Third,** Quietman7's sporadic qualifying statements, like "my personal recommendation"

---

[5] The cases Bleeping cites for the proposition that "courts often hold statements made in an online forum to be non-actionable opinion," *see* D.I. 30 at 22, are inapposite precisely because they involve open forums, rather than venues for the exchange of technical assistance. *See Sandals Resorts Int'l v. Google, Inc.*, 925 N.Y.S.2d 407, 415 (N.Y. App. Div. 2011) (referring to "bulletin boards and chat rooms" that are a "repository of casual, emotive, and imprecise speech"); *Brahms v. Carver*, 33 F.Supp.3d 192, 195 (E.D.N.Y. 2014) (observing that statement was made on forum "where people typically solicit and express opinions" and where the parties were then engaged in a "heated argument—replete with name-calling"); *Versaci v. Richie*, 815 N.Y.S.2d 350, 351-52 (N.Y. App. Div. 2006) (noting the "rambling commentary about litigation" at issue was made "on an Internet public message board, which, as characterized even by plaintiff, is a forum where people air concerns about any matter.").

or "in my opinion" do not render the posts non-actionable. *See Flamm v. Am. Assoc. of Univ. Women*, 201 F.3d 144, 152 (2d Cir. 2000) ("The mere recitation of prefatory phrases such as 'in my opinion' or 'I think' will not render innocent an otherwise defamatory statement."); *Condit v. Dunne*, 317 F. Supp. 2d 344, 366 (S.D.N.Y. 2004) ("Statements that constitute false assertions of fact are no less defamatory simply because they are preceded by qualifying expressions.").

*Fourth*, to the extent that any of the unlawful statements are not pure statements of fact, those statements are still actionable mixed opinion. Bleeping's claim that ESG has "violated several consumer protection laws in many states" implies that ESG has been found guilty of such violations (which ESG has not) or that Bleeping obtained a legal analysis of such laws from a qualified source (of which there is no evidence in the posts). Similarly, the statement that SpyHunter is "ineffective" and has a "high rate of false positives" implies Bleeping has performed legitimate testing of SpyHunter (of which, again, there is no evidence in the posts). Additionally, a number of Bleeping's statements expressly rely on false facts in outdated postings. *See* D.I. 25 at ¶¶ 83-85; *see also Flamm*, 201 F.3d at 152 ("[T]he fact that a particular accusation originated with a different source does not automatically furnish a license … to repeat or publish it without regard to its accuracy or defamatory character."). Where a "plaintiff alleges that both the opinions and the facts are false, a motion to dismiss should ***not*** be granted." *Jewell v. NYP Holdings, Inc.*, 23 F. Supp. 2d 348, 377 (S.D.N.Y. 1998) (emphasis added).

*Fifth*, any argument that courts have dismissed libel/trade libel claims with more offensive language than Bleeping used is irrelevant because Bleeping cannot hide behind any hyperbolic language. A court may find highly offensive language not actionable where it is "rhetorical hyperbole," "vigorous epithet," or "name-calling" in the context of a heated discussion. *See Brahms*, 33 F.Supp.3d at 198. This rule plainly is irrelevant to Bleeping's posts,

which it admits were "civil, even-tempered, thoroughly documented, and neither vitriolic nor inflammatory," D.I. 26 at 2, and which were made on a forum where Bleeping controls and censors language and tone to ensure civil discussion.

*Finally,* Bleeping's claim that ESG has somehow "admitted on the face of the complaint" that "most" of Bleeping's statements are true is simply wrong and ignores and distorts ESG's allegations through piecemeal references to isolated statements.[6]  *See* D.I. 30 at 20-21.  The Court cannot and should not engage in such an analysis, particularly on a motion to dismiss. *See Church of Scientology v. Flynn*, 744 F.2d 694, 696 (9th Cir.1984) ("[At the pleadings stage] the court must refrain from a 'hair-splitting' analysis of what is said in an article to find an innocent meaning.")*; see also Condit*, 317 F. Supp. 2d at 367 ("Were the Court to parse out the statements clause by clause, it perhaps could imagine that each is innocuous. … But properly read together, defendant's statements … constitute … false assertions of fact.").  When Bleeping's unlawful posts are viewed in context, there can be no argument that Bleeping has made false and defamatory statements.  For instance, while Bleeping does state that SpyHunter was *previously* listed as rogue because of "the company's history of employing aggressive and deceptive advertising," it follows that statement by asserting that "Enigma *still* engages in deceptive advertising," informing readers that users continue to report "deceptive advertising," or by asserting "it is a dubious program."  *See* D.I. 25-6 at 3; D.I. 25-7 at 2; D.I. 25-8 at 3.  These statements together convey to Bleeping's users that although Spyhunter was "delist[ed]" as a rogue product, Bleeping is asserting SpyHunter *remains* a rogue product.

In other instances, Bleeping makes no explicit mention of delisting and states only that ESG has a "history of employing aggressive and deceptive advertising," implying an *ongoing*

---

[6] Notably, Bleeping attempts to mislead this Court by stripping statements of their context while simultaneously complaining that ESG misleadingly characterized those statements, despite the fact that ESG attached the full text of all posts as exhibits to its Complaint.

and/or recent pattern of aggressive and deceptive advertising.  *See* D.I. 25-10 at 3, 10, 14; D.I.

25-11 at 5, 8.  Similarly, although Bleeping states that SpyHunter is not classified as malware or

rogue, it immediately explains that those "security vendors which have tried in the past [to target

SpyHunter for removal as malware] received threats of legal action for attempting to do so or

agreed to legal settlements as a result of litigation brought forth by Enigma Software."  *See* D.I.

25-6 at 4.  This conveys that but for ESG's improper legal threats and litigation tactics,

SpyHunter would be classified as malware or rogue.[7]

Because all of the statements on which ESG brings its claims are false statements of fact

or mixed opinion, Bleeping's defamation claim cannot be dismissed.

### B.  ESG Has Pled False and Misleading Statements.

Because Bleeping's statements satisfy the libel/trade libel standard, they necessarily also

fall into the broader category of "false or misleading" statements under the Lanham Act.  Under

the Lanham Act, a statement is actionable where it is (1) literally false on its face or by necessary

implication or (2) "while not literally false, … nevertheless likely to mislead or confuse

consumers."  *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 148, 153 (2d Cir. 2007).

Even if this Court were to find any statement not individually actionable as defamation -

which it should not - that statement still is legally "false or misleading" under the Lanham Act in

a competitive setting, taken individually or in combination with other statements as part of a

pattern of unfair competition.  Indeed, whether statements are "false or misleading" under the

Lanham Act generally is an issue of fact and not appropriate for determination on a motion to

dismiss.  *See Conopco Inc. v. Wells Enterprises, Inc.*, 14 CIV. 2223, 2015 WL 2330115, at *4

---

[7] Bleeping also tries to argue that its statement that SpyHunter or ESG have not cooperated in submitting their program for testing by AV-Test "most likely due to the program's ineffectiveness and high rate of false positives" is only "mild editorializing" and thus not actionable.  There is a material difference between neutrally saying AV-Test has not yet tested SpyHunter and accusing ESG of refusing to participate to hide its software's inadequacies.  This is not a "minor inaccuracy"; the falsity goes directly to ESG's legitimacy in the industry and its software's efficacy.

(S.D.N.Y. May 14, 2015) (denying motion to dismiss and finding plaintiff entitled "to further develop facts" where parties disputed whether statement was literally false or misleading); *see also Apotex Inc. v. Acorda Therapeutics, Inc.*, 11 CIV. 8803 AT, 2014 WL 5462547, at *4 (S.D.N.Y. Oct. 23, 2014) (holding plaintiff need not show a statement is false or misleading but need only show "a reasonable juror could reach that conclusion" to survive summary judgment).

### III.   ESG Has Adequately Pled Its Lanham Act Claim.

ESG has clearly stated a claim for false advertising under the Lanham Act.  To plead such a claim, a plaintiff must allege: "(1) the defendant has made a false or misleading statement; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience; (3) the deception is material in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 416 (S.D.N.Y. 2013).  For the reasons stated *infra*, ESG has pled false and misleading statements.   Bleeping does not take issue with ESG's pleading of the remaining elements for good reason.  ESG plainly has pled that Bleeping's statements have deceived or have the capacity to deceive a substantial number of consumers, D.I. 25 at ¶ 105, the deception is material because the statements are directed at ESG's business ethics and SpyHunter's functionality, *id.* at ¶ 104, Bleeping placed the statements in interstate commerce, *id.* at ¶ 102, and ESG was injured as a result, *id.* at ¶ 107.

Bleeping's only argument goes to whether ESG has adequately alleged Bleeping's statements constitute "commercial advertising or promotion."  ESG clearly has.  Statements constitute "commercial advertising or promotion" if they are "(1) commercial speech; ... (2) for the purpose of influencing consumers to buy defendant's goods or services; and (3) . . .

15

disseminated sufficiently to the relevant purchasing public." *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003). The Second Circuit has declined to reach whether a plaintiff must also plead that the defendant is "in commercial competition with Plaintiff," *see id.* at 91, but even if that is a requirement, Bleeping's Motion fails for the following reasons.

**First**, Bleeping's statements are commercial speech. Speech is "properly characterized as commercial" when it "[1] is an advertisement, [2] makes reference to a specific product, and [3] the speaker has an economic motivation for the communication." *Anderson v. Treadwell*, 294 F.3d 453, 460 (2d Cir. 2002). As alleged in the Complaint, (1) Bleeping's posts are a form of comparative advertising intended to promote Malwarebytes by disparaging ESG; (2) the posts refer to Malwarebytes' Anti-Malware product and instruct users to download and purchase it after uninstalling ESG's product; and (3) Bleeping has a direct economic motivation to disparage ESG and direct consumers to Malwarebytes instead, because Bleeping profits from sales of Malwarebytes products that it generates.[8]

**Second**, Bleeping's statements sought to influence consumers to avoid ESG products and instead purchase products for which Bleeping receives commissions. *See* D.I. 25 at ¶¶ 7, 10, 12-13, 89-91. In fact, Quietman7 touted Bleeping's influence over consumers. *See* D.I. 25-7 at 3 ("Since we do not recommend [SpyHunter], I doubt any of our members use it…").

**Third,** Bleeping's statements were sufficiently disseminated to the relevant purchasing public because, as part of a coordinated campaign, Bleeping **routinely** made false and misleading statements about ESG and SpyHunter and/or referred users to prior posts in which such statements were made. *See* D.I. 25 at ¶¶ 86, 95. This was not done solely in response to specific

---

[8] Bleeping asserts, without any supporting legal authority, that ESG's allegation of "a *possible* commercial *benefit* as a result of the post" is "insufficient" to make its speech commercial. D.I. 30 at 29. This argument ignores not only that proof of commercial benefit is not an element of the commercial speech test but also the obvious fact that all advertising provides only a possible commercial benefit, because resulting sales are not guaranteed.

user questions about the merits of ESG or SpyHunter, but also in instances when users only mentioned having SpyHunter installed.  *See, e.g.,* D.I. 25-8; *see also Boule*, 328 F.3d at 91 (finding sufficient dissemination where defendants responded to reporter's inquiry but "intended and expected that their statements" would be disseminated to key art dealers, statements "were part of their campaign to disparage [plaintiffs]," and ARTnews magazine had "prominence" in "commercial art world")*; Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48 (2d Cir. 2002) (noting that "cause of action might exist where a defendant maintains a well-enforced policy to disparage its competitor each time it is mentioned by a customer…").

**Finally**, Bleeping is "in commercial competition" with ESG because Bleeping, for its own benefit, peddles products that compete with ESG's SpyHunter.  As a result, Bleeping and ESG compete to sell the antimalware products in which each has a direct financial interest.  *See Boule*, 328 F.3d at 91.  Indeed, at the initial status conference in this case, this Court recognized that this case concerns "competition in business."

## IV.  ESG Has Pled the Required Degree of Fault.

Bleeping's attempt to graft an actual malice pleading standard onto ESG's state law claims must be rejected because it has not established ESG is a limited-purpose public figure.  Moreover, assuming, *arguendo*, that ESG were required to plead actual malice, it undoubtedly has done so in the Complaint.

### A.  Bleeping Has Failed to Establish That ESG is a Public Figure.

Bleeping concedes that ESG can be subject to an actual malice standard only if it is a limited-purpose public figure.  *See* D.I. 30 at 18-19.  While Bleeping identifies the Second Circuit's four-part test to determine whether a party is a limited-purpose public figure ("*Lerman* Test"), *see* D.I. 30 at 18-19, it fails to establish that ESG satisfies each element.  *See Lerman v. Flynt Distrib. Co.*, 745 F.2d 123, 136-37 (2d Cir. 1984).

For example, Bleeping incorrectly argues that ESG's business success somehow proves that ESG is a limited-purpose public figure.  D.I. 30 at 19.  However, the "mere fact that a business enterprise is successful is an insufficient reason to deem it a public figure."  *Behr v. Weber*, No. 16047/89, 1990 WL 270993, at \*2 (N.Y. Sup. Ct. Jan. 5, 1990), *aff'd,* 568 N.Y.S.2d 948 (N.Y. App. Div. 1991); *see also Computer Aid, Inc. v. Hewlett-Packard Co.*, 56 F. Supp. 2d 526, 536 (E.D. Pa. 1999) (despite being "one of the largest and most influential corporations in the world," HP not a limited-public figure because it did not voluntarily thrust itself into a public controversy); *Lee v. City of Rochester*, 663 N.Y.S.2d 738, 745-46 (N.Y. Sup. Ct. 1997) (self-promotion not determinative, otherwise "any business that advertised would, merely by the fact of advertising, become a public figure"), *aff'd,* 677 N.Y.S.2d 848 (N.Y. App. Div. 1998). Bleeping further points to ESG's prior litigation and public responses to claims about its products, neither of which are relevant.  *See Time, Inc. v. Firestone*, 424 U.S. 448, 455 (1976) ("[R]esort to the judicial process . . . is no more voluntary in a realistic sense than that of the defendant called upon to defend his interests in court."); *Calvin Klein Trademark Trust v. Wachner*, 129 F.Supp.2d 248, 253 (S.D.N.Y. 2001) (holding that being forced to respond publicly does not result in forfeiture of protections against defamation).

Ultimately, Bleeping fails to identify a public controversy or allege any instances in which ESG voluntarily injected itself into or assumed a position of prominence in such controversy.  Thus, Bleeping has not met its burden to establish ESG is a limited-purpose public figure who must plead actual malice.[9]

---

[9] In addition, because Bleeping's statements constitute commercial speech, *see infra* at Section III, such statements do not warrant heightened protection.  *U.S. Healthcare*, 898 F.2d at 936 (for commercial speech, the speaker should not be able to "immuniz[e], in effect, otherwise defamatory speech—behind the actual malice standard afforded to core speech by the First Amendment—simply by reference to an issue of public concern"); *see also Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001). Judge Chin, while sitting on this Court, cited to *Procter* as "an example of how courts have interpreted the Supreme Court's directive to afford commercial speech 'less

**B. Although Not Required to Do So, ESG Has Adequately Pled Actual Malice.**

Although Bleeping is not entitled to heightened protections, ESG has nonetheless adequately pled actual malice.  Bleeping concedes that ESG "alleged actual malice by claiming that Bleeping '*knew, recklessly, disregarded*, or should have known, that its statements about ESG and SpyHunter were false and misleading when made.'"  D.I. 30 at 20.  Bleeping conveniently ignores, however, that ESG also alleged that Bleeping: (1) never properly or fully tested SpyHunter, despite knowing such testing is the only reasonable way to determine its efficacy; (2) relied on discredited and outdated sources despite knowing or recklessly disregarding that ESG had publicly disproved them; (3) has a direct financial incentive to disparage ESG because it profits from sales of competing products; and (4) refused to correct or retract its defamatory statements.  *See* D.I. 25 at ¶¶ 7, 12-13, 82-85, 96; *see also Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015) ("defamatory statements … published despite obvious specified reasons to doubt the veracity of the informant or the accuracy of his reports or despite the inherently improbable nature of the statements themselves" suggest actual malice); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 278 (S.D.N.Y. 2013) (probative evidence of actual malice includes where "defendant has a motive for defaming the plaintiff" or "knows or suspects that it has committed an error and refuses to acknowledge it").  These allegations clearly provide the required "plausible grounds to infer actual malice" and "raise a reasonable expectation that discovery will reveal evidence of actual malice."  *Biro*, 807 F.3d at 546.

**V.  ESG's Claims Are Timely.**

**A.  The Lanham Act Has No Statute of Limitations and Bleeping Has Not Established Laches.**

Bleeping misleadingly argues that ESG's Lanham Act claim is subject to a statute of limitations.  D.I. 30 at 16.  To the contrary, the Second Circuit has squarely held that no statute

---

protection.'"  *World Wrestling Fedn. Ent., Inc. v. Bozell*, 142 F. Supp. 2d 514, 528 (S.D.N.Y. 2001).  This Court should adopt the reasoning of these courts and not provide Bleeping any benefit of a heightened pleading standard.

of limitations applies to the Lanham Act; only laches can bar Lanham Act claims.  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (2d Cir. 1996).  Because of "the fact-specific nature of a court's [laches] inquiry,"[10] the laches defense is "not appropriately raised" on a motion to dismiss unless "plaintiff can prove no set of facts to avoid the insuperable bar."  *Jose Armando Bermudez & Co. v. Bermudez Intern.*, 99 CIV. 9346, 2000 WL 1225792, at *8 (S.D.N.Y. Aug. 29, 2000).  As Bleeping does not devote a single sentence to the legal standards that apply to a laches defense, let alone meet its high burden to show ESG could prove "no set of facts" that would rebut the defense, its Motion on this basis must be denied.[11]  *See George Nelson Found. v. Modernica, Inc.*, 12 F. Supp. 3d 635, 655 (S.D.N.Y. 2014) ("Laches is an affirmative defense and is generally not available on a motion to dismiss."); *see also Fitzgibbons v. City of Oswego*, No. 5:10-CV-1038, 2011 WL 6218208, at *6 (N.D.N.Y. Dec. 13, 2011) ("[A]ny determination of prejudice . . . as a result of Plaintiff's delay in bringing suit is a fact-based inquiry, which is inappropriate for judgment on a motion to dismiss.").

Independently, the Court should deny Bleeping's Motion because Bleeping is wrong as a matter of law that the Court should borrow the one-year statute of limitations for a defamation claim for determining "which party has the burden of proving or rebutting the laches defense." *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, 06-3508-cv, 2007 WL 2914452, at *1 (2d Cir. Oct. 5, 2007).  Almost universally, courts in this Circuit have held that analogizing to fraud claims best effectuates the policy of the Lanham Act to protect "persons engaged in … commerce against unfair competition" and prevent "fraud and deception in such commerce."

---

[10] To prevail on a laches defense, a defendant must establish that "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay." *Ikelionwu v. U.S.*, 150 F.3d 233, 237 (2d Cir. 1998).

[11] While ESG need not rebut any laches arguments, since Bleeping made none, ESG notes that it diligently pursued redress for Bleeping's illegal statements, first attempting an amicable resolution through cease and desist letters followed by prompt filing once it became clear Bleeping was unwilling to correct its behavior.  D.I. 25 at ¶ 96.

*PepsiCo, Inc. v. Dunlop Tire & Rubber Corp.*, 578 F. Supp. 196, 199 (S.D.N.Y. 1984); *see also Conopco*, 95 F.3d at 191 (finding fraud statute analogous for false advertising claim); *Gordon & Breach Sci. Publrs. S.A. v. Am. Inst. of Physics*, 859 F. Supp. 1521, 1528-30 (S.D.N.Y. 1994) (collecting cases).  Indeed, Bleeping is unable to cite a single case from this Circuit or otherwise where a court borrows a defamation statute of limitations for a Lanham Act case.[12]

Consistent with this Court's long-standing precedent, the six-year statute of limitations period for fraud is undoubtedly the most analogous for a laches analysis of ESG's Lanham Act claim.  ESG's Lanham Act claim seeks redress not for isolated disparaging statements but rather for Bleeping's coordinated campaign of false representations intended to mislead consumers regarding the relative merits of ESG's and Malwarebytes' products and to profit by diverting sales to Malwarebytes.  There is no dispute that all actions for which ESG seeks to hold Bleeping liable occurred well within this six year period.  When the unlawful conduct occurs within the fraud limitations period, "there is no presumption of laches and the burden remains on the defendant to prove the defense."  *Brown v. Sixteen, Inc.*, No. 02 Civ. 4630, 2009 WL 1159161, at *6 (S.D.N.Y. Apr. 28, 2009).  As Bleeping fails to even mention the word "laches," let alone prove to this Court that laches applies here, Bleeping's Motion on this basis fails.[13]

**B.  Bleeping's Defamatory Statements Are Within the One-Year Limitations Period.**

Bleeping's defamation statute of limitations argument fails because it made all of the unlawful statements within the one-year statute.  Bleeping concedes ESG's libel and trade libel claims are timely with respect to Bleeping's statements that ESG is untrustworthy, involved in a

---

[12] The only case Bleeping cites in support of its legally incorrect position is *PepsiCo,* which Bleeping mischaracterizes and which actually supports borrowing the six-year fraud statute of limitations period.  Bleeping incorrectly asserts that the *PepsiCo* court held that the statute of limitations borrowed for a laches analysis "changes based on the facts of each case."  D.I. 30 at 16.  The court, however, held no such thing.  It instructed courts to select the limitations period "which best effectuates the federal policy at issue" in the Lanham Act.  578 F. Supp. at 199.

[13] While Bleeping is free to try to convince a jury that laches should apply, it cannot make the argument in its reply brief.  *See In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 301 n.29 (S.D.N.Y. 2009) ("[A]rguments made for the first time in a reply brief are not properly before the Court."); *see also Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708 (2d Cir. 2007) (holding defendants waived an argument raised for the first time in a reply brief).

"scam," and has a "history of employing aggressive and deceptive advertising," and that SpyHunter is "dubious and ineffective." D.I. 30 at 16. Bleeping made those unlawful statements in postings in separate forum topics in May, June, August and October 2015; all within the one-year limitations period. D.I. 25-10 at 3; D.I. 25-10 at 10, 13-14; D.I. 25-11 at 5.

Bleeping also utterly fails to substantiate its claim that "almost none of the complained-of statements was [sic] published within one year of Plaintiff initiating this action." D.I. 30 at 16. On September 26, 2014, Bleeping made numerous false and misleading statements in a forum topic entitled "spyhunter vs malwarebytes vs iobit." D. I. 25-6. Bleeping cannot dispute that on February 26, 2015 and on July 31, 2015, it interjected itself again in the same forum topic and provided different forum members with its false and misleading statements from September 26, 2014. *Id*. at 7, 9; *see also* D.I. 25-7 at 5 (Quietman7 interjecting on January 25, 2016 in his earlier December 10, 2013 posting). Bleeping also cannot dispute that in new forum topics involving different forum members from those in the "spyhunter vs malwarebytes vs iobit" topic, Bleeping again interjected itself and provided these different members and its self-proclaimed 3.5 million "unique visitors" each month (*see* Ex. 1) with a link to its false and misleading statements from September 26, 2014.[14] D.I. 25-9-25-11. Bleeping made these posts on at least January 26, May 7, June 1, June 11, August 5, and October 31, 2015. *Id.*; D.I. 25 at ¶¶ 86-88.

Bleeping concedes that the statute of limitations for a defamation claim is started anew "by a 'republication' of the statement on a separate occasion from the original that is meant to reach a new audience." *See* D.I. 30 at 15; *see also Pearce v. Manhattan Ensemble Theater, Inc.*, 06 CV 1535, 2009 WL 3152127, at *8 (S.D.N.Y. Sept. 30, 2009). Under this standard, Bleeping has republished its earlier statements within the limitations period in at least three different ways.

*First*, Bleeping, through its agents, republished its defamatory statements when it

---

[14] "Ex. _" refers to exhibits attached to the Declaration of Eric A. Prager filed herewith.

repeatedly directed new audiences to them by providing links to the original post.  Contrary to

Bleeping's assertion, this practice is not a situation of "mere[] hyperlinking."[15]  Quietman7 and

other Bleeping staff members routinely directed users toward the September 2014 post, while

re-emphasizing, and sometimes repeating, its contents.  The very fact that staff members linked

back to the original post as a source of information for the user indicates that the staff members

knew those users had not seen the original post and intended to disseminate it to a new audience.

*See Firth v. State*, 761 N.Y.S.2d 361, 362 (N.Y. App. Div. 2003) ("Republication … justifies

renewing the statute of limitations when 'the subsequent publication is intended to and actually

reaches a new audience.'"); *Etheredge-Brown v. Am. Media, Inc*., 13 F. Supp. 3d 303, 306

(S.D.N.Y. 2014) (noting republication can occur "in circumstances where the new publication

arises from a conscious act that is undertaken in order to reach a new audience").

Bleeping also incorrectly argues the single publication rule applies to its conduct.  *See*

D.I. 30 at 15-16.  That rule, however, stands only for the proposition that the continuous

presence online of an unaltered posting will not retrigger the limitations period simply through

existence or because a third party accessed the post without direction.  *See Firth*, 761 N.Y.S.2d

at 367; *Biro*, 963 F. Supp. 2d at 267.  New York applies the single publication rule to avoid the

"potential for endless retriggering of the statute of limitations, multiplicity of suits and

harassment of defendants."  *Firth v. State*, 775 N.E.2d 463, 466 (N.Y. 2002).  Accordingly, to

---

[15] Bleeping overreaches when it asserts "[t]he law is clear that merely hyperlinking to an earlier publication does not constitute a republication."  Two of the cases Bleeping cites do not discuss hyperlinks to defamatory statements. *See Martin v. Daily News, L.P*., 990 N.Y.S. 2d 473 (N.Y. App. Div. 2014) (involving addition of hyperlinks *from* defamatory posting *to* third party websites); *Graboff v. Am. Ass'n of Orthopaedic Surgeons*, 559 F. App'x 191 (3d Cir. 2014) (no hyperlinks).  Bleeping's two other citations are inapposite as they do not specifically address whether a defendant that hyperlinks routinely to its own prior defamatory statements to gain new audiences should avoid liability.  *See In re Phila. Newspapers, LLC*, 690 F.3d 161 (3d Cir. 2012) (holding only that hyperlinking to an article by a different author did not constitute republication of defamatory statements in the earlier article); *Haefner v. N.Y. Media, LLC*, 27 Misc. 3d 1208(A) (N.Y. Sup. Ct. 2009).  Indeed, in *Haefner*, the Court specifically noted that a link "was not alleged to have been effected with defendants' acquiescence or participation." *Haefner v. N.Y. Media, LLC,* 918 N.Y.S.2d 103, 104 (N.Y. App. Div. 2011).

protect authors from otherwise continuous liability, it may make sense not to trigger a new limitations period whenever a third party *happens* to find and read an author's original statements.  The rationale, however, does not support allowing an author to avoid liability while *continuously and intentionally disseminating* his own defamatory statements to new audiences.

*Second*, Bleeping's additional postings within the threads containing its pre-January 2015 posts constitute actionable republication of the original posts.  Subsequent comments in the same online thread by the original author can constitute republication when the author responds to third-party comments and re-emphasizes the truth of the original statements.  *See Larue v. Brown*, 333 P.3d 767, 773 (Ariz. Ct. App. 2014) (holding replies that "referred to and re-alleged the substance of the original articles" and later that "provid[ed] additional information in response to a reader's questions, and re-urg[ed] the truth of the original articles" were actionable republications).  Bleeping posted responses in the original threads multiple times within the limitations period, including in February and July 2015 and January 2016, directing users to and reemphasizing the original post.  *See* D.I. 25-6 at 7, 9; D.I. 25-7 at 5.  Each time, Bleeping republished its original post.

*Finally*, Bleeping republished Quietman7's September 28, 2014 post by subsequently editing it, which occurred at least once within the limitations period.  Indeed, the September 28, 2014 attached to the Complaint actually contains a link to another topic on the Bleeping forums that was created *on March 15, 2015*.  *See* Ex. 2.  Thus, Bleeping necessarily edited the post on or after March 15, 2015 to add that reference.[16]  Webpage modifications, like the addition of a reference, are republications because the modification is substantive and related to the

---

[16] Indeed, as alleged in the Complaint, ESG sent Bleeping several cease and desist letters in 2015.  *See* D.I. 25 at ¶ 96. In response, Bleeping made substantive edits to the post, including creating a "References" section with footnotes, adding more information about contacting ESG's technical support and uninstalling or disabling SpyHunter, rewording certain defamatory statements, and modifying fonts to change the emphasis of the statements.

defamatory statements, rather than a routine change to a feature like formatting.  *See Biro*, 963 F. Supp. 2d at 267-68 (noting that republication depends in part on "whether any alterations to the webpage were related to the allegedly defamatory content at issue"); *In re Davis*, 347 B.R. 607, 612 (W.D. Ky. 2006) (citing *Firth*) ("[W]here substantive material is added to a website, and that material is related to defamatory material that is already posted, a republication has occurred. … To hold otherwise would give a publisher carte blanche to continue to publish defamatory material on the Internet after the statute of limitations has run in the first instance.").

ESG's alleged facts, which must be taken as true, establish actionable republication within the statute of limitations that cannot be dismissed on a motion to dismiss.  *See Etheredge-Brown*, 13 F. Supp. 3d at 307 n.2 (noting that whether a publication constitutes "a republication is a question of fact, at least in part").  Moreover, ESG has alleged, on information and belief based on Bleeping's identified pattern of false and misleading statements, that Bleeping has made additional actionable statements on its forums.  D.I. 25 at ¶ 93.  Through the stay of discovery it requested, Bleeping prevents ESG from obtaining evidence of such statements while seeking to capitalize in its Motion on the absence of that evidence.  This should not be permitted. ESG has pled sufficient allegations of actionable statements made within the limitations period to defeat any statute of limitations argument at this juncture.  Of course, Bleeping can renew its assertion of this defense later as a motion for summary judgment after a full record of evidence is developed for this Court.  But at this juncture, when all allegations and facts must as a matter of law be read in a light most favorable to the plaintiff, the Court should find dismissal based on a statute of limitations defense improper and precluded by law.

## CONCLUSION

For the above reasons, the Court should deny Bleeping's Motion.

Dated:   April 22, 2016                         Respectfully submitted,

                                        By:   /s/ Eric A. Prager
                                              Eric A. Prager
                                              Eric R. I. Cottle
                                              K&L GATES LLP
                                              599 Lexington Avenue
                                              New York, NY 10022
                                              Telephone: 212.536.3900
                                              Facsimile: 212.536.3901
                                              eric.prager@klgates.com
                                              eric.cottle@klgates.com

                                              &

                                              Terry Budd
                                              Christopher M. Verdini
                                              (*pro hac vice*)
                                              K&L GATES LLP
                                              210 Sixth Avenue
                                              Pittsburgh, PA 15222
                                              Telephone: 412.355.6500
                                              Facsimile: 412.355.6501
                                              terry.budd@klgates.com
                                              christopher.verdini@klgates.com

                                              *Attorneys for Plaintiff Enigma Software
                                              Group USA, LLC*

## <u>NOTICE OF SERVICE</u>

I certify that on April 22, 2016, the foregoing was filed electronically using CM/ECF.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Eric A. Prager*
Eric A. Prager