UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
ENIGMA SOFTWARE GROUP USA, LLC,           :
                                          :
              Plaintiff,        :
                                          :
   -against-                              :     Case No.: 1:16-cv-00057-PAE
                                          :
BLEEPING COMPUTER LLC and                 :
DOES 1-10,                                :
                                          :
              Defendants.       :
-----------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

RANDAZZA LEGAL GROUP, PLLC
Marc J. Randazza, Esq.
Admitted *pro hac vice*
4035 South El Capitan Way
Las Vegas, Nevada 89147
Tele:  702-420-2001
Fax: 305-437-7662
ecf@randazza.com

GREENBERG TRAURIG, P.A.
Gregory W. Herbert, Esq.
450 South Orange Avenue, Suite 650
Orlando, FL 32801
Tele: (407) 420-1000
Fax: (407) 841-1295
herbertg@gtlaw.com

GREENBERG TRAURIG, LLP
John J. Elliott, Esq.
200 Park Avenue
New York, New York 10166
Tele: (212) 801-9200
Fax: (212) 801-6400
elliottj@gtlaw.com

**TABLE OF CONTENTS**

1.0   INTRODUCTION ................................................................................................................1

2.0   ARGUMENT.......................................................................................................................1

    2.1   47 U.S.C. § 230 bars Plaintiff's claims...................................................................1

    2.2   The Majority of the Statements Fall Outside the Limitation Period.......................2

    2.3   Plaintiff's Defamation, Trade Libel/Commercial Disparagement
          Claims Fail...............................................................................................................5

          2.3.1   The Statements Are True or Protected Opinion...........................................5

          2.3.2   Plaintiff Does Not Allege the Requisite Degree of Fault ............................8

    2.4   Plaintiff Fails to State a Claim for Relief for False Advertising..............................9

3.0   CONCLUSION..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013)..................................................................................7

*Biro v. Conde Nast*,
  807 F.3d 541 (2d Cir. 2015)..............................................................................................8, 9

*Bolger v. Young Drug Prods. Corp.*,
  463 U.S. 60 (1983).............................................................................................................10

*Boule v. Hutton*,
  328 F.3d 84 (2d Cir. 2003)................................................................................................10

*BWP Media USA, Inc. v. Clarity Digital Group, LLC*,
  2016 U.S. App. LEXIS 7406 (10th Cir. Apr. 25, 2016) .....................................................2

*Catalanello v. Kramer*,
  18 F. Supp. 3d 504 (S.D.N.Y. 2014)...................................................................................8

*Chao v. Mount Sinai Hosp.*,
  2010 U.S. Dist. LEXIS 133686 (S.D.N.Y. Dec. 17, 2010) .................................................5

*Condit v. Dunne*,
  317 F. Supp. 2d 344 (S.D.N.Y. 2004).................................................................................5

*Croton Watch Co. v. Nat'l Jeweler Magazine, Inc.*,
  2006 U.S. Dist. LEXIS 55753 (S.D.N.Y. Aug. 7, 2006) ...................................................10

*In re Davis*,
  347 B.R. 607 (W.D. Ky. 2006)...........................................................................................4

*Egiazaryan v. Zalmayev*,
  880 F. Supp. 2d 494 (S.D.N.Y. 2012).................................................................................5

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*,
  314 F.3d 48 (2d Cir. 2002)................................................................................................10

*Gertz v. Robert Welch*,
  418 U.S. 323 (1974).............................................................................................................5

*Gordon & Breach Sci. Publrs, v. Am. Inst. Of Physics*,
  859 F. Supp. 1521 (S.D.N.Y. 1994)..................................................................................10

*Kalimantano GmbH v. Motion in Time, Inc.*,
  939 F. Supp. 2d 392 (S.D.N.Y. 2013).................................................................................9

*Kirk v. CBS, Inc.*,
  1987 U.S. Dist. LEXIS 4607 (N.D. Ill. June 3, 1987) ........................................................7

*McCabe v. Rattiner*,
  814 F.2d 839 (1st Cir. 1987).........................................................................................6, 7

*Merck Eprova AG v. Brookstone Pharms., LLC*,
 920 F. Supp. 2d 404 (S.D.N.Y. 2013) .................................................................................... 9

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
 591 F.3d 250 (4th Cir. 2009) ................................................................................................. 2

*Nyitray v. Johnson*,
 1998 U.S. Dist. LEXIS 1791 (S.D.N.Y. Feb. 19, 1998) ........................................................ 5

*Parsi v. Daioleslam*,
 890 F. Supp. 2d 77 (D.C.C 2012) .......................................................................................... 9

*Phantom Touring, Inc. v. Affiliated Publications*,
 953 F.2d 724 (1st Cir. 1992) .................................................................................................. 7

*Reliance Ins. Co v. Barron's*,
 442 F. Supp. 1341 (S.D.N.Y. 1977) ...................................................................................... 8

*Salyer v. Southern Poverty Law Ctr., Inc.*,
 701 F. Supp. 2d 912 (W.D. Ky. 2009) ................................................................................... 3

*Steaks Unlimited v. Deaner*,
 623 F.2d 264 (3d Cir. 1980) .................................................................................................. 8

*Tobinick v. Novella*,
 2015 U.S. Dist. LEXIS 150083 (S.D. Fla. 2015) ................................................................ 10

*TufAmerica, Inc. v. Diamond*,
 968 F. Supp. 2d 588 (S.D.N.Y. 2013) .................................................................................... 1

*Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
 425 U.S. 748 (1976) ............................................................................................................ 10

**State Cases**

*Churchill v. State of New Jersey*,
 378 N.J. Super. 471 (N.J. Super. 2005) ................................................................................. 3

*Elite Funding Corp. v. Mid-Hudson Better Bus. Bureau*,
 629 N.Y.S.2d 611 (Sup. Ct. Westchester Cty. 1995) ............................................................ 6

*Immuno AG v. MoorJankowski*,
 77 N.Y.2d 235 (1991) ........................................................................................................... 6

*Larue v. Brown*,
 333 P.3d 767 (Ariz. Ct. App. 2014) ...................................................................................... 4

*Martin v. Daily News L.P.*,
 121 A.D.3d 90 (1st Dep't 2014) ........................................................................................ 2, 3

*Martin v. Daily News, L.P.*,
 951 N.Y.S.2d 87 (Sup. Ct. N.Y. Cty. 2012) .......................................................................... 3

*Smith v. United Church Ministry, Inc.*,
 212 A.D.2d 1038 (4th Dep't 1995) .................................................................................... 5, 7

*Stepanov v. Dow Jones & Co., Inc.*,
   987 N.Y.S.2d 37 (1st Dep't 2014) .................................................................................7

*Themed Restaurants, Inc. v. Zagat Survey, LLC*,
   781 N.Y.S.2d 441 (Sup. Ct. N.Y. Cty. 2004) ................................................................6

**Federal Statutes**

47 U.S.C. § 230 ......................................................................................................................1, 2

**1.0     INTRODUCTION**

This is a case about forum posts seeking to educate computer users about the dangers of Plaintiff and its product.  Plaintiff would much rather not have these shortcomings made known. Everything else is an attempt to muddy the waters. Section 230 immunity applies here.  Plaintiff seeks to have this court believe that the actual author of the statements at issue, "quietman7," is somehow an extension of Defendant, and such a closely connected appendage that he can be substituted for the Defendant himself.  Meanwhile, he was nothing more than one of many volunteer "moderators" on the website.  This is all moot if quiteman7's statements are protected by the First Amendment. They are presumptively so, and Plaintiff fails to establish any statement at issue is unprotected.  The statements are objectively true, or opinion based on disclosed facts. Further, Plaintiff fails to establish any statement at issue constitutes commercial speech under the Lanham Act.  Despite three opportunities to get it right, Plaintiff's Second Amended Complaint ("SAC," Doc. No. 25) still fails to state a single supportable claim for relief.

**2.0     ARGUMENT**

**2.1     47 U.S.C. § 230 bars Plaintiff's claims**

Plaintiff attempts to sidestep Defendant's immunity under 47 U.S.C. § 230 by asserting that quietman7, the author of the statements in question, is Defendant's agent.  (Doc. No. 32, Opp., at 5-7.)  In doing so, Plaintiff once again relies on fabrications of the various moderators' duties that contradict the information Defendant provides on its web site. Queitman7 was identified as a "Global Moderator" when he published each of the statements in question.  (*See* SAC at Exs. 6-11.) Defendant does not hold global moderators out as employees or technical experts.  The published information makes it clear that their primary functions are moving and closing forum discussions. (SAC, Ex. 2, at 3-4.)[1]  Plaintiff's entire agency argument thus rests on a faulty premise.  Quietman7 did not have express authority to write the posts on Defendant's

---

[1] Plaintiff argues its assertion of Defendant holding out its "staff" as computer experts must be accepted as true and all argument to the contrary must be ignored.  But this overlooks the fact that Plaintiff's allegations in the SAC are contradicted by the evidence it provides.  Accordingly, this conclusory allegation need not be accepted.  *See TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013).

behalf. Nor would a reasonable forum-goer think that a Moderator acted with authority in writing the subject forum posts. Defendant is immune under 47 U.S.C. § 230.

*BWP Media USA, Inc. v. Clarity Digital Group, LLC*, 2016 U.S. App. LEXIS 7406 (10th Cir. Apr. 25, 2016) dealt with a copyright infringement claim and the Digital Millennium Copyright Act, another statute created to provide immunity to service providers for third-party content. The defendant in *Clarity* was a digital publisher of news articles that engaged third parties as independent contractors to provide content. *See id*. at *4-5. The court found that this relationship was insufficient to establish an agency relationship when the contractors uploaded allegedly infringing material to defendant's web site in connection with content they were hired to provide.[2] *See id*. at *9-10. Here, Plaintiff does not even allege that quietman7 is an independent contractor of Defendant, much less an employee. As in *Clarity*, the Court should find quietman7 did not act as an agent of Defendant, and that Defendant is immune under Section 230. Dismissing Defendant "at the earliest possible stage of the case" would serve the purpose of Section 230, to provide defendants with immunity from *suit*, not just *liability*, for statements authored by third parties. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254-55 (4th Cir. 2009).

    **2.2**    **The Majority of the Statements Fall Outside the Limitation Period[3]**

New York has long recognized the "single publication rule," under which the limitation period for defamation-related claims accrues at first publication of a statement. *Martin v. Daily News L.P.*, 121 A.D.3d 90, 103 (1st Dep't 2014). "This rule applies to publications on the Internet … so continuous access to an article posted via hyperlinks … is not a republication." *Id*. A "republication" of a statement does not "retrigger" the limitation period unless it is

---

[2] The court also found that "issuing instructions on the general topics Examiners were to write about, actively soliciting new articles, and suggesting that Examiners include slide shows or pictures to accompany articles" did not mean the infringing material was posted at the defendant's direction. *Clarity*, 2016 U.S. App. LEXIS 7406 at *12.

[3] As Plaintiff recognizes, there is a presumption of laches in false advertising claims when the claim is brought outside the applicable statute of limitations. As argued in the Motion to Dismiss, the applicable statute of limitations here is the one-year period for defamation. Plaintiff argues this is not the proper limitation period, but a cursory review of the actual false advertising claim shows liability is based only on Defendant's "use in commerce of false and misleading statements." (SAC at ¶¶102-106.) The one-year period for defamation actions is thus appropriate, and Plaintiff has failed to rebut the presumption of laches.

"republished in a new format," or is republished in "a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original edition.'" *Martin v. Daily News, L.P.*, 951 N.Y.S.2d 87, 87 (Sup. Ct. N.Y. Cty. 2012). Plaintiff correctly states a republication sufficient to retrigger the statute of limitations can occur when the republication is intended to reach a new audience, but offers a definition of "new audience" that is far too broad. *Martin* dealt with an article republished by a newspaper that added links to social media sites. The court found that even though these links could lead to increased readership of the article, the defendant's "targeted audience consists of visitors to its website. This is not a new audience; rather, it is the same audience as when the 2007 Article first appeared on [defendant's] website." *Id*. The court also recognized that the statutory period is not retriggered when "the hyperlink merely provided a new means of accessing the first article." *Id*.

There was no "republication" here; providing a hyperlink to a prior article is not republication. *Martin*, 121 A.D.3d at 103. Even if it was, the statements at issue were all published on Defendant's forums, with the intended readership visitors to Defendant's site. Some of the linking posts were made within the same thread as the allegedly defamatory post, while others appeared in different threads about Plaintiff. Rather than trying to reach a new audience, these links merely served as a means of providing forum users improved access to an earlier post. As *Martin* held, a link to a prior article, even one published by defendant, is not a republication for limitations purposes when the targeted audience is visitors to defendant's website. 951 N.Y.S.2d at 87. The court in *Salyer v. Southern Poverty Law Ctr., Inc.*, 701 F. Supp. 2d 912, 917 (W.D. Ky. 2009), likewise held when a "hyperlink is simply a new means for accessing the referenced article," there is no republication even when the link is provided "to entice new readers who had not previously read" the article. This is true even when defendant encourages readers to view the allegedly defamatory article. *See Churchill v. State of New Jersey*, 378 N.J. Super. 471, 483 (N.J. Super. 2005) (press release directing viewers to article and encouraging readers to view it "altered the means by which website visitors could access the

report, but they in no way altered the substance or form of the report," and did not retrigger limitation period). Thus, quietman7's hyperlinks do not retrigger the statute of limitations.[4]

As a fallback position, Plaintiff argues that quietman7 made changes to the forum post published September 28, 2014 (Opp. at 29-30) within the statute of limitations. The only change Plaintiff provides evidence for is a link to another forum discussion thread, created March 15, 2015, that refers back to the September 28, 2014 post. (*See* Doc. No. 31-2.) Despite appearing in the "references" section of the original post, the March 15 thread is not referred to anywhere in the body of the post and is not cited as evidence for any proposition in the post. This is not a substantive change that establishes republication, as it has no bearing on any of the allegedly defamatory statements. *In re Davis*, 347 B.R. 607, 612 (W.D. Ky. 2006), cited by Plaintiff, establishes this by explaining that substantive changes retrigger the limitation period because "[t]o hold otherwise would give a publisher carte blanche to continue to publish defamatory material on the Internet after the statute of limitations has run in the first instance." There is nothing remotely defamatory about the addition of a reference to the March 15, 2015 thread, and so this addition does not retrigger the limitation period.[5] Plaintiff finally makes the unsupported claim "that Bleeping has made additional actionable statements on its forums." (Opp. at 30, citing SAC at ¶93.) Plaintiff does not identify these statements or generally describe their substance. Paragraph 93 of the SAC fails to provide Defendant with any notice as to the nature of these "additional" statements, and they should be disregarded.[6] The majority of the statements at issue are thus time-barred.

---

[4] *Larue v. Brown*, 333 P.3d 767, 773 (Ariz. Ct. App. 2014), is inapposite, as it involved a defendant not merely referring back to a prior article in online comment responses, but adding substantive content including comments that "altered the form of the original articles," such that their positioning "directly beneath the original articles … impl[ied] they were supplements to the original articles." *Id*. The facts here fall far short of those in *Larue*.

[5] Plaintiff also alleges in its Opposition that quietman7 made several changes to the September 28, 2014 post within the limitation period. (*See* Opp. at 29, n.16.) These are not in the Second Amended Complaint, however, and the Court need not accept them as true. Furthermore, Plaintiff provides no evidence of these alleged changes.

[6] Plaintiff argues that the current stay on discovery somehow prevents Plaintiff from gathering evidence of these statements, but does not explain this assertion. If Defendant does indeed "host[] additional false, misleading and defamatory statements" on its forums, Plaintiff has full access to them. (SAC at ¶93.)

### 2.3 Plaintiff's Defamation, Trade Libel/Commercial Disparagement Claims Fail[7]

#### 2.3.1 The Statements Are True or Protected Opinion

Plaintiff continues to rewrite the statements in quietman7's posts to fit its legal narrative. "[T]ruth is an absolute, unqualified defense to a civil defamation action . . . and . . . substantial truth is all that is required." *Nyitray v. Johnson*, 1998 U.S. Dist. LEXIS 1791, *29 (S.D.N.Y. Feb. 19, 1998) (quoting *Smith v. United Church Ministry, Inc.*, 212 A.D.2d 1038, 1039 (4th Dep't 1995)). Statements of pure opinion are not actionable. *See Gertz v. Robert Welch*, 418 U.S. 323, 339-40 (1974). Nor are statements of opinion supported by disclosed facts "when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts, leaving the reader free to draw his own conclusions." *Condit v. Dunne*, 317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004). Even if the supporting facts are false, the opinion only becomes actionable when "the difference between the stated facts and the actual truth would cause a reader to question the validity of the opinion." *Egiazaryan v. Zalmayev*, 880 F. Supp. 2d 494, 503 (S.D.N.Y. 2012).

Plaintiff argues any allegation of violating a law is an assertion of fact rather than opinion, while ignoring that any determination on this point rests on the specific statements in question and their context. The statement "[t]hat ESG engages in 'deceptive advertising which violates several consumer protection laws in many states'" appears alongside a hyperlink to complaints on the web site Complaints Board substantiating this statement. (*See* SAC Exs. 7 at 3 and 8 at 3; Doc. No. 17-6.) Plaintiff does not dispute quietman7's factual bases for this statement,[8] or even allege that the factual bases are false. Plaintiff suggests this statement is only

---

[7] Plaintiff argues its trade libel/commercial disparagement claim can coexist with its defamation claims. While New York courts recognize trade libel as a distinct cause of action from defamation, the two can only coexist in a lawsuit when both (i) the statements at issue and (ii) the resulting damages are different. *Chao v. Mount Sinai Hosp.*, 2010 U.S. Dist. LEXIS 133686, *35 (S.D.N.Y. Dec. 17, 2010) (dismissing trade libel claim as duplicative of defamation claim). Plaintiff does not limit its trade libel claim to any particular statements, and the allegations of "monetary and reputational harm" for the trade libel claim are identical to the defamation claim. (SAC at ¶¶108-115, 123.)

[8] The only factual source Plaintiff claims is inaccurate is the spywarewarrior.com page, noting it previously listed SpyHunter as a "rogue" product." (*See* Doc. No. 17-5 at 2.) None of the statements at issue rely on this source other than the statement that SpyHunter "was previously listed as a rogue product because of the company's history of employing aggressive and deceptive advertising." (SAC Ex. 8 at 3.) It is undeniably true that spywarewarrior.com listed SpyHunter on its web site for this explicitly stated reason.

protected if Plaintiff has been found guilty of violating such laws "or supported by a properly performed, detailed legal analysis," but none of the cases cited support this proposition. (Opp. at 14-15.) It is not defamatory to review hundreds of consumer complaints about deceptive advertising and then opine that a company engages in deceptive advertising. *Elite Funding Corp. v. Mid-Hudson Better Bus. Bureau*, 629 N.Y.S.2d 611, 615 (Sup. Ct. Westchester Cty. 1995); *Immuno AG v. MoorJankowski*, 77 N.Y.2d 235, 255 (1991).

Plaintiff asserts that "rogue," "dubious," "ineffective" and "false positives" are somehow special terms of art that make these statements factual enough to disregard the legion of cases that hold otherwise. (Opp. at 15.) This new allegation does not appear in the SAC; rather, Plaintiff only alleges that "rogue product . . . is a term used to identify products supposedly of unknown, questionable, or dubious value as anti-spyware protection." (SAC at ¶80.) Plaintiff provides no other definitions for these terms, leaving the Court with the plain meanings of "dubious," "ineffective," and "false positives," with a definition for "rogue" that is synonymous with "dubious." What is an "effective" anti-malware program? What rate of false positives is "high?"[9] How could "dubious" possibly be a term of art in the software field? As noted in the Motion to Dismiss, these are not statements that contain enough precision to be defamatory, since they are not capable of being proven demonstrably true or false, and even if they were, there is more than sufficient factual basis to support quietman7's statements. *See, e.g., McCabe v. Rattiner*, 814 F.2d 839, 842 (1st Cir. 1987). Despite Plaintiff's attempt to compare these facts to *Themed Restaurants, Inc. v. Zagat Survey, LLC*, 781 N.Y.S.2d 441, 445 (Sup. Ct. N.Y. Cty. 2004), these statements are not equivalent to claiming that Taco Bell uses horse meat in its burritos – a factually verifiable statement. Plaintiff goes so far as to imply that calling SpyHunter "snake oil" would be defamatory. (Opp. at 15.) As with the other statements at issue, calling something "snake oil" is plainly opinion, not reasonably susceptible of defamatory meaning.

---

[9] Even if Plaintiff were to claim that SpyHunter has a 0% false positive rate it could not survive the Motion to Dismiss, because that claim would not be plausible. Plaintiff also argues that this statement is defamatory based on its allegation, pulled out of thin air, that quietman7 did not conduct any testing of SpyHunter. This argument completely ignores the voluminous consumer complaints about SpyHunter on this very issue.

*Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir. 1992) (critic calling theatrical production "snake-oil job" not actionable); *see also Kirk v. CBS, Inc.*, 1987 U.S. Dist. LEXIS 4607, *12 (N.D. Ill. June 3, 1987) ("snake oil remedies" found to be an opinion).

Alongside "rogue," the term "scam" is incapable of any defamatory meaning in this context.  Plaintiff does not attempt to distinguish *McCabe*, which explicitly held that "[t]he lack of precision [in the meaning of the word 'scam'] makes the assertion 'X is a scam' incapable of being proven true or false." *McCabe*, 814 F.2d 839, 842 (1st Cir. 1987).  Nor does Plaintiff distinguish *Adelson v. Harris*, 973 F. Supp. 2d 467, 491 (S.D.N.Y. 2013), which approved *McCabe*.  The out-of-circuit cases Plaintiff cites for a contrary proposition are unpersuasive, particularly since New York's Constitution grants greater protection to expression than the U.S. Constitution.  Plaintiff also attempts to justify its torturing of the language in quietman7's posts to bleed some potentially defamatory meaning from them.  It argues a defamatory implication in informing Defendant's users that consumers have complained about its deceptive advertising practices, and by calling it "a dubious program." (Opp. at 18.) Plaintiff urges a defamatory meaning for the factually accurate statement that SpyHunter is *not* classified as malware or rogue software and that security vendors who attempted to do so received legal threats from Plaintiff. (Opp. at 19; SAC Ex. 6 at 4; Doc. No. 17-4.)  This is not a false light claim, which could allow liability despite the truth of a given statement. This is a defamation claim, to which truth is an absolute defense. *United Church*, 212 A.D.2d at 1039.  Even had Plaintiff pleaded a claim for defamation by implication, the statements are non-actionable, as when "a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established." *Stepanov v. Dow Jones & Co., Inc.*, 987 N.Y.S.2d 37, 43 (1st Dep't 2014) (quotation omitted).

Plaintiff recognizes that context is important in this analysis, but mischaracterizes the nature of Defendant's forums by falsely claiming they do not host discussions on general interest topics. (Opp. at 17.)  To the contrary, a cursory review of the forums shows there are several categories of discussion unrelated to computer security and hardware.  ("Forums" home page,

attached as **Exhibit 1**, available at: http://www.bleepingcomputer.com/forums/.) The context of Defendant's online forum does not make it any more likely that a given viewer will see quietman7's posts as assertions of fact, rather than opinion. Further, a statement need not appear in a no-holds-barred Internet forum to be opinion. *Catalanello v. Kramer*, 18 F. Supp. 3d 504, 517 (S.D.N.Y. 2014) (in context of academic article, statements that plaintiff "harassed" and "discriminated" employee were protected opinion).

### 2.3.2   Plaintiff Does Not Allege the Requisite Degree of Fault

Plaintiff has failed to establish that it is anything other than a limited-purpose public figure under the standard provided in *Biro*, 963 F. Supp. 2d 255, 270 (S.D.N.Y 2013). It incorrectly asserts that a company's advertising, promotion, and success are irrelevant to determination of whether it is a public figure. For example, *Steaks Unlimited v. Deaner*, 623 F.2d 264, 273-74 (3d Cir. 1980) found plaintiff's advertising campaign made it a public figure for purposes of the quality of its products and alleged misrepresentations about them. Due to its advertising campaign, plaintiff "voluntarily injected itself into a matter of public interest … it appears to have created the controversy for the purpose of influencing the consumer public." *Id*. The prominence of a business can also make it a public figure for purposes of its services or particular transactions. *See Reliance Ins. Co v. Barron's*, 442 F. Supp. 1341, 1348 (S.D.N.Y. 1977). The public controversy at issue here is Plaintiff's deceptive business practices, the danger its software poses, and Plaintiff's harassment of those who criticize it. Plaintiff created this controversy and injected itself into it by virtue of its "worldwide sales of SpyHunter" to its "millions of customers," and its purported global recognition "by vendors, end users, and government agencies." (SAC at ¶¶25, 21.) This alleged reputation and notoriety is not for unrelated business activities, but the conduct and products discussed in the statements at issue.

Plaintiff is a limited public figure in this context, and must plausibly allege actual malice. *Biro v. Conde Nast*, 807 F.3d 541, 545 (2d Cir. 2015). The facts alleged to establish actual malice are: 1) Defendant did not properly test SpyHunter; 2) it "relied on discredited and outdated sources" despite Plaintiff allegedly disproving them; 3) a purported financial motive;

and 4) a refusal to retract the statements. (Opp. at 24.) These allegations do not plausibly assert actual malice.  Plaintiff provides no basis for asserting Defendant did not test SpyHunter, but this is irrelevant given the complaints about SpyHunter which provide a reasonable basis for this assertion. (Doc. Nos. 17-6, 17-7.)  Plaintiff provides no factual basis for how the "discredited and outdated sources" are false, or "disproven," or why Defendant should have known this.  Any purported financial motive is incidental, as the statements themselves were meant to inform users of an unreliable malware program. A cease and desist letter from a plaintiff does not retroactively impute actual malice to a defendant; otherwise, a plaintiff could always establish actual malice simply by sending one pre-suit.  *Parsi v. Daioleslam*, 890 F. Supp. 2d 77, 92 (D.C.C 2012) ("author's knowledge of 'denials, however vehement' does not show actual malice") (quoting *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989)).  Plaintiff fails to allege plausible facts establishing actual malice.  *See Biro*, 807 F.3d at 545.[10]

### 2.4    Plaintiff Fails to State a Claim for Relief for False Advertising

The elements of a false advertising claim relevant here are (1) a false or misleading statement that (2) the defendant placed in interstate commerce.  *See Merck Eprova AG v. Brookstone Pharms., LLC*, 920 F. Supp. 2d 404, 417 (S.D.N.Y. 2013).  Plaintiff borrows its defamation analysis for its discussion of the false and misleading element of its false advertising claim.  While Plaintiff correctly states that a statement need not be literally false for it to be false or misleading, it provides no explanation or argument as to how any statement at issue is false or misleading beyond its discussion of the allegedly defamatory nature of the statements.  There is thus no need to discuss this element other than by reference to Section 2.3.1, *supra*.

The Lanham Act only applies to statements made in "commercial advertising or promotion," meaning that the statements (1) must be commercial speech; (2) for the purpose of influencing consumers to buy defendant's goods or services;" and (3) must be "disseminated

---

[10]Plaintiff also fails to plead special damages for its libel claim or establish a libel *per se* claim. A defamation plaintiff must plead special damages in a defamation claim, or the statement must be, as relevant here, "'a statement that tends to injure another in his or her trade, business, or profession.'" *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 419 (S.D.N.Y. 2013) (quotations omitted). Plaintiff does neither; its allegations in this regard are conclusory (*see* SAC at ¶¶123, 125) and need not be accepted as true. *See id.*, 939 F. Supp. 2d at 420.

sufficiently to the relevant purchasing public." *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003).[11] It is imperative that the statements be "part of an organized campaign to penetrate the relevant market." *Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). A statement may constitute commercial speech where it is an advertisement, it refers to the speaker's specific products, and the defendant has a direct economic motivation for making the statement. *Bolger v. Young Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983). None of these factors standing alone amounts to commercial speech. Plaintiff's claims fail this test, as none of the statements at issue are advertisements. Plaintiff argues they "are a form of comparative advertising," but provides no authority or explanation. The posts are informational warnings to forum users in response to questions from users about Plaintiff's product, supported by citations to third-party sources and consumer complaints. Because Plaintiff provides no basis for characterizing the statements as advertisements, and Defendant does not concede they are, Plaintiff fails on the first *Bolger* element. *Bolger*, 463 U.S. 60, 66-67 (1983); *Tobinick v. Novella*, 2015 U.S. Dist. LEXIS 150083, *10 (S.D. Fla. 2015); *Croton Watch Co. v. Nat'l Jeweler Magazine, Inc.*, 2006 U.S. Dist. LEXIS 55753, *32-33 (S.D.N.Y. Aug. 7, 2006). While Plaintiff makes much of Defendant's alleged economic interest in quietman7's posts, "[s]peech . . . is protected even though it is carried in a form that is 'sold' for profit . . . and even though it may involve a solicitation to purchase or otherwise pay or contribute money." *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 761 (1976). Quietman7's posts are not commercial speech, and Plaintiff's false advertising claim fails.

**3.0    CONCLUSION**

The Court should grant the Motion to Dismiss and dismiss the SAC with prejudice.

Dated April 29, 2016                                             Respectfully Submitted,

                                                                 */s/ Marc J. Randazza*

---

[11] *Gordon & Breach Sci. Publrs, v. Am. Inst. Of Physics*, 859 F. Supp. 1521, 1536 (S.D.N.Y. 1994) established a fourth element, that the parties be in competition. Plaintiff cannot plausibly allege Defendant competes with it. Plaintiff's definition of 'competitor' would encompass any website on which its competitors advertise. It fails to explain how earning affiliate commissions from a competitor makes Defendant a competitor itself; its allegation that Defendant is a "sales arm" of a competitor is conclusory and implausible. (Opp. at ¶44.)

Marc J. Randazza, Esq.
Admitted *pro hac vice*
RANDAZZA LEGAL GROUP, PLLC
4035 South El Capitan Way
Las Vegas, Nevada 89147
Tele: 702-420-2001
Fax: 305-437-7662
Email: ecf@randazza.com

*/s/ Gregory W. Herbert*
Gregory W. Herbert, Esq.
New York Bar Registration No. 2502755
GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, FL 32801
Telephone: (407) 420-1000
Facsimile: (407) 841-1295
herbertg@gtlaw.com

John J. Elliott, Esq.
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
elliottj@gtlaw.com
